468 A.2d 485

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Joseph LEE.**

Superior Court of Pennsylvania.

Argued May 26, 1983.

Filed Oct. 28, 1983.

Reargument Denied Dec. 29, 1983.

Petition for Allowance of Appeal Denied April 24, 1984.

Harry A. Penich, Assistant District Attorney, Mercer, for Commonwealth, appellant.

Frances S. Palmer, Hermitage, for appellee.

Before CAVANAUGH, ROWLEY and CIRILLO, JJ.

CAVANAUGH, Judge:

The trial court, following a jury verdict which found appellee Joseph Lee guilty of rape, burglary and criminal trespass, granted Lee a new trial. The court found that trial counsel failed to adequately advise appellee of his constitutional and statutory rights to remain silent. We disagree with the conclusion reached by the trial court and reverse the grant of a new trial.

In order to place the issue in focus it is necessary that we review the evidence as presented by the Commonwealth. The alleged victim of the rape, Victoria Capitol, was present in the Colony Bar in Sharon, Pennsylvania on Saturday night, July 19, 1980. She came to the bar alone, her usual companion, Blaine Coleman, having gone out of town for the weekend. During the course of the evening Joseph Lee was also in the Colony Bar and had a conversation with Capitol. He asked if he could walk her home and she refused. After she left the bar he followed shortly thereafter and encountered her on the street. He stated that he wanted to use her bathroom and would pay her. She refused. Nevertheless, when Capitol saw a female friend on the street near her house and went to that person's house Lee came along. Lee finally left and Capitol went home. She secured the doors of the house and fell asleep on the sofa after watching television. Sometime later she awakened to find Lee standing near her. She had placed a knife near her and picked it up. In an ensuing struggle Lee took the knife from her and eventually struck her, dragged her to the floor and held the knife to her throat. He raped her. Capitol later found a screen removed from a second story window above a porch roof. The next day she was reported by several witnesses to be upset, hysterical and crying, and disclosed the previous night's episode to a co-worker. She was examined at the hospital where she was employed. A vaginal test gave evidence that intercourse had taken place and scratches were found on the front of her neck, upper left arm, right arm and back. Lee was charged with the rape.

We have reviewed the Commonwealth's evidence, not because the sufficiency of the evidence is attacked, but to summarize the evidence that Lee was met with at trial. In his defense Lee testified that after seeing Capitol at the bar he walked her home, left later on, and in the early morning hours returned to her house. He stated that they had consensual intercourse; that they had done so "numerous" times previously, and that he had paid her.

Lee had had several disputes concerning his appointed counsel's representation prior to trial and in a post-trial hearing alleged that he was never advised that he had the right not to testify at trial and was entitled to an instruction to the jury that no adverse inference could be drawn from his failure to testify. His court appointed attorney, Herman M. Rodgers, who was for over ten years a Common Pleas Judge in this Commonwealth agreed that he never made it known to Lee that if he did not testify his failure to testify could not be used against him or advise him of his rights not to testify.

■ It is beyond the need of citation to state that a defendant in a criminal case is under no compulsion to testify and that he is entitled to an instruction that no inference may be drawn against him by the factfinder as the result of his failure to testify.

■ The measure of counsel's duty to his client is effective assistance. As often restated:

We cannot emphasize strongly enough, however that our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests.

*Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 604, 235 A.2d 349, 352 (1967).

■ Thus we examine counsel's stewardship. Unquestionably there is no reasonable basis for not advising a client that he has a constitutional right not to testify and is entitled to a charge that no adverse inference may be drawn from the exercise of this right.[1] However, the failure to impart the full ramifications of the prerogative to remain silent should not occasion the grant of a new trial unless it had some adverse effect on the conduct of the trial. Otherwise we would elevate what may be mere inadvertence into ineffectiveness. As stated in *Maroney* "The issue is not

[1]. See, for example, *Commonwealth v. Lincoln,* 270 Pa.Super. 489, 411 A.2d 824 (1979).

counsel's reputation or his ability, but his stewardship of the challenged trial" 235 A.2d 356.

■ Initially, we note that counsel recommended to Lee that he testify. Faced with the Commonwealth's evidence, counsel's stewardship in recommending to Lee that he testify cannot be said to be against his client's interest. He knew there would be a positive identification and independent evidence that Lee had been in Capitol's company on the night in question. There was physical evidence that intercourse had taken place and the victim would testify to a rape. Since Lee ultimately testified under oath that the intercourse had taken place consensually we must assume that counsel was so told. Under the circumstances the recommendation to Lee that he testify surely was designed to effectuate the client's interest.

Moreover, it is clear that counsel did not impose his will on Lee concerning his testifying. Rather the facts as found by the trial judge following the post-trial hearing on counsel's stewardship included the following:

(26) The attorney told the defendant that if he did testify that he had a chance of winning and perhaps a good chance. He informed the defendant that he wished to make an early opening; that he had to know what the facts were.

(27) The trial attorney, Rodgers, did not insist on the defendant testifying but always asked the defendant what he wanted to do. The sessions always ended up by the defendant saying he wanted to testify.

(28) Attorney Rodgers informed the defendant that the credibility of the persons testifying would be very important. He informed the defendant, 'It's up to you. You have to make the decision.'

Thus it is clear that the decision was Lee's. Since Lee was aware of his option to testify or not, it cannot be seriously argued that Lee felt *compelled* to testify. Had there been compulsion the conversation concerning his decision to testify would have been meaningless. Therefore,

our only concern is the failure to advise Lee of the appendage to his right not to testify—the "no adverse interest" charge to the jury. We have been cited no cases and our research does not disclose any concerning ineffectiveness in these circumstances; failure of counsel to advise the defendant that his right to remain silent at trial carries with it the companion right to instructions to the jury of no adverse inference.

Several compelling facts emerge: (1) counsel's advice to testify was prudent; (2) Lee wanted to testify and made his own decision to do so; (3) Lee did testify in detail that the intercourse was consensual. As stated it would be a perversion of the record in this case to conclude that Lee felt compelled to testify. The court's finding is that at all times he *wanted* to testify. The advice to him by experienced counsel was given with counsel's full knowledge that he would receive the "no inference" charge if he did not testify. Under the facts of this case we see no reason to grant a new trial because counsel admittedly failed to impart to his client, a nuance of the privilege against self-incrimination especially as weighed against Lee's continuing desire to testify.

Appellant after having sought and received a jury trial; after having willingly testified under oath before that jury in detail that the act of intercourse took place with Capitol's consent, would now have us agree to the grant of a new trial presumably to give him an opportunity to submit the case to the jury without his testimony.

In cases where a defendant waives the right to counsel, waives a jury, or pleads guilty our courts have required an on-the-record colloquy to insure that the defendant is aware of his rights and makes a knowing, understanding and intelligent waiver of these rights. *Commonwealth v. Ingram*, 455 Pa. 198, 316 A.2d 77 (1974); Pa.R.Crim.P. 1101; 318; 319. There is no such on the record colloquy for defendants who elect to be tried before a judge and jury. This is so because such defendants exercise rather than surrender their basic constitutional rights, and to the extent

that any rights may be waived the courts rely on counsel to secure his client's waiver. Our courts have never required that the failure to explain each and every constitutional right would, ipso facto, entitle the unadvised defendant to a new trial. For example, a defendant has the right to confront and cross-examine witnesses yet we have not required counsel to secure his client's waiver each and every time he enters into a stipulation of fact or decides not to cross-examine a witness. Even in cases where our courts have mandated a formal record waiver of rights, our Supreme Court has deviated from the formulistic approach and found from an examination of the total circumstances that a defendant who plead guilty understood the elements of the crime against him. *Commonwealth v. Shaffer*, 498 Pa. 342, 446 A.2d 591 (1982). This represents a reasoned digression from the rule which would automatically grant a new trial every time there is a departure from the precise incantation of the enshrined verbal exhortations. In a situation such as this where there is no mandated on-the-record colloquy and after a full jury trial, our courts should be even less willing to seize upon an omission of a refinement of constitutional advices to grant a new trial. The core issue is not whether there was a failure to advise but rather whether the defendant's course of action was caused by this gap in advice. *Commonwealth v. Williams*, 496 Pa. 486, 437 A.2d 1144 (1981) (court found defendant plead guilty based on awareness of guilt and hope for leniency, not on lack of advice that testimony of accomplice might be held inadmissible). *Commonwealth v. Anthony*, 307 Pa. Super. 312, 453 A.2d 600 (1982), allocatur granted May 13, 1983 (court found defendant plead guilty to achieve a reduction of charges; not because he was not told that verdict must be unanimous).

So here, the trial court, in consideration of its findings, erred by concluding that the conceded absence of the advice merited the grant of a new trial. As noted above, the court found that Lee at all times wanted to testify and it is clear that his decision was in fact (based upon Lee's version of

consent) the most prudent course. The court is not bound by any post-verdict protestations that if he had known the judge would add a word of caution in his charge he would not have taken the stand.

We conclude that under the facts of this case the failure of counsel to advise his client of the implications of his fifth amendment rights does not entitle him to a new trial and we reverse the grant of a new trial. The trial court did not reach other points raised by counsel in the post-trial motions and we therefore remand so that they may be considered.

Reversed and remanded with instructions. We do not retain jurisdiction.