598 A.2d 975

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Reginald LEWIS, Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 23, 1990.

Decided Oct. 31, 1991.

William P. James, Philadelphia, for appellant.

Gaele McLaughlin Barthold, Deputy Dist. Atty., Ronald Eisenberg, Chief, Appeals Div., Marianne E. Cox, Asst.

Dist. Atty., Robert A. Graci, Chief Deputy Atty. Gen., for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

CAPPY, Justice.

This appeal presents two issues of first impression: Whether the failure of a trial judge to instruct the jury that they are not permitted to draw any adverse inference from the defendant's decision not to testify violates an accused's rights pursuant to Article I, Section 9 of the Pennsylvania Constitution when the accused has requested that such an instruction be given; and whether the failure to give that instruction constitutes harmless error. For the reasons that follow, we hold that such an omission does violate the accused's rights and does not constitute harmless error.

## FACTS

Michael Hawkins was fatally stabbed on September 11, 1983 during an altercation inside Holmesburg State Prison, Philadelphia, Pennsylvania. Appellant, Reginald Lewis, was convicted by a jury on October 17, 1986, of murder in the first degree and possession of an instrument of crime for the killing of Michael Hawkins. On November 28, 1988, post trial motions were denied, and the trial court imposed the sentence of death previously set by the jury. This is a direct appeal from the imposition of the sentence of death pursuant to 42 Pa.C.S.A. §§ 722(4), 9711(h)(1); Pa.R.A.P. Rule 702(b).

In each case where the death penalty is imposed, this Court is required to conduct an independent review of the sufficiency of the evidence, even where the defendant has not challenged the conviction on that ground. *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937 (1982), *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327, *reh'g.*

*denied,* 463 U.S. 1236, 104 S.Ct. 31, 77 L.Ed.2d 1452 (1983). Our review of the evidence requires a determination of whether the evidence, and all reasonable inferences deducible therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all the elements of the offense(s) beyond a reasonable doubt. *Commonwealth v. Syre,* 507 Pa. 299, 489 A.2d 1340 (1985), *cert. denied,* 480 U.S. 935, 107 S.Ct. 1577, 94 L.Ed.2d 768 (1987).

The events culminating with Hawkins' death began at approximately 9:00 p.m. on the evening of September 11, 1983, in cell block G of Holmesburg State Prison where the appellant and the deceased were both residents. The cell block was 146 yards long with one gate for ingress and egress. Around 9:00 p.m., Hawkins approached appellant, who was standing at the midpoint of the cell block in the corridor which runs between the cells. The two men heatedly exchanged words. Hawkins threw a punch that missed appellant, but which prompted one of the block guards, Robert Quinones, to separate the men.

■ An hour later, Hawkins again approached appellant, who was in the rear of the cell block conversing with several other inmates. There is no clear consensus among the witnesses as to the precise facts of this confrontation. What was apparent, however, was that one of the two inmates was armed with a homemade knife. The most logical version of the facts, consistent with the jury's verdict, is that Hawkins initiated the fight, drawing first blood from appellant. Appellant then came into possession of the knife and pursued Hawkins. The entire cell block disrupted around this activity. Inmates began throwing benches and garbage cans and a mob of more than fifty inmates formed in the rear of the cell block moving toward the front gate in pursuit of Hawkins.

Hawkins reached the gate first and screamed for the guards to open it as the pursuing mob yelled "kill him." Appellant broke from the crowd, shouted "charge," and

stabbed Hawkins. Within seconds, the guards opened the gate and Hawkins fell to the ground. He was rushed to the hospital where he was unsuccessfully operated on, and pronounced dead. Appellant was also taken to the emergency room and was treated and released.

Immediately following the stabbing, one of the guards, Robert Quinones, recovered a homemade knife from the floor of the cell block. Quinones testified that the knife he discovered looked like the same knife he observed in appellant's left hand during the chase. Blood found on the knife was consistent with Hawkins' blood type.

A review of the preceding facts establishes that there was sufficient evidence presented at trial to support appellant's conviction for first degree murder.

## PROCEDURAL HISTORY

A few days after the incident, appellant was arrested for the murder of Michael Hawkins. Prior to trial, appellant escaped from Holmesburg State Prison. Upon being apprehended in Buffalo, New York, he was returned to this jurisdiction.

Trial was originally scheduled to commence on November 14, 1985 in Philadelphia County. During jury selection the appellant requested a change of venue, which was granted.[1] The matter was transferred to Lancaster County where jury selection began on October 6, 1986. On October 8, 1986, after the jury had been selected, appellant requested that venue be returned to Philadelphia County.[2] This re-

1. This change of venue was based upon the volume of publicity generated by the case, largely due to appellant's own correspondence with the media and a series of guest columns he authored in the Philadelphia Daily News in which he expressed his views on the death penalty and the unfairness of his prior conviction.

2. Appellant sought the second change of venue as he was dissatisfied with the racial composition of the venire panel from which his jury was selected. The appellant is Black and there were no Blacks on the venire panel.

446

quest was denied.[3]

At trial, appellant argued three alternate theories of defense: First, that the Commonwealth failed to prove appellant struck the fatal blow; second, that in the event appellant killed Hawkins, he did so in self-defense; and third, if appellant killed Hawkins, he did so in the heat of passion without premeditation.

Appellant presented several witnesses in support of his various defenses, but did not take the stand. Prior to the court's charge to the jury, appellant requested the jurors be instructed not to draw an adverse inference against appellant from his failure to take the stand; the so-called "no-adverse-inference" instruction.[4] The trial judge agreed to give the requested charge, but negligently failed to do so during the instructions to the jury. When counsel pointed out this omission, the court mistakenly stated that it did in fact give the instruction, and declined to repeat it. Following conviction and post trial motions, the trial judge declined to grant a new trial, finding the failure to instruct the jury as requested amounted to harmless error.

The Commonwealth concedes that the "no-adverse-inference" charge was not given. It asserts, however, that the failure to so instruct the jury was harmless error.

**3.** The appellant also raises this issue in the instant appeal. However, as our disposition of the case rests on the constitutional claims, we do not reach this issue.

**4.** This "no-adverse-inference" instruction, so called, is contained in the Pennsylvania Suggested Standard Criminal Jury Instructions and provides as follows:

3.10A (Crim) DEFENDANT'S FAILURE TO TESTIFY NOT EVIDENCE OF GUILT

It is entirely up to the defendant in every criminal trial whether or not to testify. He has an absolute right founded on the Constitution to remain silent. You must not draw any inference of guilt from the fact that the defendant did not testify.

Although the Standard Jury Instructions have not been adopted by this Court, we find the above language satisfactory to convey the "no-adverse-inference" message to the jury.

## DISCUSSION

■ We will first address the failure of the trial judge to include the "no-adverse-inference" charge in his instructions, as a matter of Pennsylvania constitutional law. Recently, in *Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887 (1991), we reaffirmed our prior caselaw in stating that although it may be useful to examine federal case-law as guidance, the rich, unique history of the Pennsylvania Constitution requires an independent analysis under that primary Commonwealth charter in each case. *Id.*, 526 Pa. at 389, 586 A.2d at 895.

### "No–Adverse–Inference" Charge

Article I, Section 9 of the Pennsylvania Constitution provides as follows:

Sec. 9. **Rights of accused in criminal prosecutions**

In all criminal prosecutions the accused hath a right to be heard by himself and his counsel, to demand the nature and cause of the accusation against him, to meet the witnesses face-to-face, to have compulsory process for obtaining witnesses in his favor, and, in prosecutions by indictment or information, a speedy public trial by an impartial jury of the vicinage; he cannot be compelled to give evidence against himself, nor can he be deprived of his life, liberty, or property, unless by the judgment of his peers or the law of the land.

In conjunction with the above constitutional provision, legislation has existed as early as 1887 in this Commonwealth prohibiting comment, by the court or prosecutor, concerning the failure of a criminal defendant to testify on his own behalf. *See* Act of May 23, 1887, P.L. 158, Sec. 10, now codified at 42 Pa.C.S.A. Sec. 5941.[5] The genesis of this

---

5. 42 Pa.C.S.A. Sec. 5941(a) provides as follows: "Except defendants actually upon trial in a criminal proceeding, any competent witness may be compelled to testify in any matter, civil or criminal; but he may not be compelled to answer any question which, in the opinion of the trial judge, would tend to incriminate him; nor may the neglect or refusal of any defendant, actually upon trial in a criminal proceeding, to offer himself as a witness, be treated as creating any presumption

provision was the clear recognition that the Pennsylvania Constitution carefully safeguards the right of an accused to stand silent at his or her trial, without adverse consequence. *See* White, *Constitution of Pennsylvania* 104–05 (1907).

This Court has determined on numerous occasions that Article I, Section 9, in providing that a defendant "cannot be compelled to give evidence against himself ...," protects the right of the defendant to stand mute protected by the presumption of innocence, without facing the oppressive task of having to explain his or her silence. *See Commonwealth v. Davis*, 452 Pa. 171, 305 A.2d 715 (1973); *Commonwealth v. Brenizer*, 467 Pa. 347, 356 A.2d 784 (1976); *see also, Commonwealth v. Miller*, 205 Pa.Super. 297, 208 A.2d 867 (1965).[6] Although we have never specifically held pursuant to Pennsylvania law that the "no-adverse-inference" instruction is required upon the defendant's request, such a belief has been axiomatic in our jurisprudence.[7]

Our decision today is consistent with the United States Supreme Court's recent decision in *Carter v. Kentucky*, 450 U.S. 288, 101 S.Ct. 1112, 67 L.Ed.2d 241 (1981). *Carter* held unequivocally that the Fifth Amendment of the United States Constitution encompasses a right to a "no-adverse-inference" jury instruction when a criminal defendant

against him, or be adversely referred to by court or counsel during the trial."

**6.** The reason the Pennsylvania Constitution safeguards this right so carefully is that there is a multitude of considerations which may lead a defendant to decline a seat at the witness chair. As Justice Musmanno explained in *Commonwealth v. Dravecz*, 424 Pa. 582, 587, 227 A.2d 904, 907 (1967): "It may be desirable and dramatic for the wrongly accused person to shout: 'I am innocent!' but not everybody responds spontaneously to stimuli. The accusation may be so startling that the accused is benumbed into speechlessness. There are persons so sensitive and hurt so easily, that they swallow their tongue in the face of overwhelming injustice."

**7.** As the Superior Court noted in *Commonwealth v. Lee*, 321 Pa.Super. 292, 295, 468 A.2d 485, 486 (1983), "[i]t is beyond the need of citation to state that a defendant in a criminal case is under no compulsion to testify and that he is entitled to an instruction that no inference may be drawn against him by the factfinder as the result of his failure to testify."

makes a timely request to the trial court. In *Carter*, the Supreme Court stated that:

> The principles enunciated in our cases construing this privilege [against self-incrimination], against both statutory and constitutional backdrops, lead unmistakably to the conclusion that the Fifth Amendment requires that a criminal trial judge must give a "no adverse inference" jury instruction when requested by a defendant to do so. *Id.* at 300, 101 S.Ct. at 1119.

*See also Bruno v. United States*, 308 U.S. 287, 60 S.Ct. 198, 84 L.Ed. 257 (1939) (requiring the "no-adverse-inference" instruction as a federal statutory matter).

We take this opportunity to state that as a matter of Pennsylvania constitutional law, as under the United States Constitution, criminal defendants in this Commonwealth are entitled to a "no-adverse-inference" jury instruction, when a timely request is made to the trial court.[8]

In the instant case, the District Attorney argues that, even absent a specific "no-adverse-inference" charge, the trial court accomplished the same general goal by indirection. The District Attorney states that the trial court repeatedly instructed the jury that defendant had no burden of proof at all, and instructed the jury that the burden of proof rested upon the Commonwealth to establish the guilt of the defendant beyond a reasonable doubt. The court made clear that the jury's verdict could only be based upon evidence that they heard from the witness stand. Moreover, the District Attorney emphasizes that virtually all of the jurors were subjected to individual *voir dire* with respect to their understanding of the above legal precepts, further assuring a collective comprehension that the defendant had no duty to testify on his own behalf.

8. The federal constitutional minimum established by the Court in *Carter* is of course binding upon us. Nonetheless, our holding that the "no-adverse-inference" instruction is also mandated by the Pennsylvania Constitution is significant in ensuring future consistency in state constitutional interpretation, since federal law is always subject to change.

Such an argument, however, misses the mark. The specific constitutionally mandated "no-adverse-inference" charge may not be replaced by a patchwork of less direct instructions. The entire premise underlying our requirement of the "no-adverse-inference" charge to the jury, under Article I, Section 9, is that the trial judge is vested with an *obligation* to protect the defendant's right to remain silent, free from the insidious danger of adverse inference presented by a jury left free to wander in speculation. Experience teaches us that the very *exercise* of an individual's right not to testify, under Article I, Section 9, may *endanger* that right if the jury is left free to draw negative inferences from the defendant's decision to exercise his or her constitutional privilege. The trial court, being in a unique position to protect a defendant's constitutionally secured right through the jury charge, is the only bulwark to ensure that the exercise of a fundamental right does not turn into an act of constitutional suicide. Having determined in this Commonwealth that a "no-adverse-inference" charge is necessary to secure the guarantees of Article I, Section 9, the judge has either given the charge or he has not. Make-shift substitutes will not suffice. Juries must be told in no uncertain terms that no adverse inference may be drawn from a defendant's failure to take the stand;[9] otherwise, we are left to mere guesswork as to the meaning juries have ascribed to tangentially related words of the court. In the instant case, it is undisputed that the trial judge failed to give the "no-adverse-inference" charge, after being timely requested to do so by counsel for defendant. Under Article 1, Section 9, a constitutional violation has occurred.[10]

**9.** *See* note 4, *supra.*

**10.** We note that the decisions of several sister states only bolster our conclusion. *See State v. Cohane,* 193 Conn. 474, 479 A.2d 763, *cert. denied,* 469 U.S. 990, 105 S.Ct. 397, 83 L.Ed.2d 331 (1984); *State v. Sinclair,* 197 Conn. 574, 500 A.2d 539 (1985); *State v. Ross,* 322 N.C. 261, 367 S.E.2d 889 (1988); *Matter of McLaughlin,* 100 Wash.2d 832, 676 P.2d 444 (1984) (involuntary commitment proceedings); *cf. James v. Commonwealth,* 679 S.W.2d 238 (Ky., 1984), *cert. denied,* 470 U.S. 1086, 105 S.Ct. 1849, 85 L.Ed.2d 147 (1985). Each of these decisions

## Harmless Error

The District Attorney next contends that, even if the defendant's constitutional right to a "no-adverse-inference" charge was inadvertently denied in this case, such an oversight was "harmless error" in view of the "overwhelming evidence" presented by the Commonwealth with respect to the defendant's guilt.[11]

The contours of the harmless error doctrine, under Pennsylvania jurisprudence, were established by this Court unambiguously in *Commonwealth v. Story,* 476 Pa. 391, 383 A.2d 155 (1978). In that case, we noted an inconsistent pattern of harmless error cases in Pennsylvania, *id.,* 476 Pa. at 405, 383 A.2d at 162, and announced a standard which would apply consistently in all criminal cases. Thus, we stated that "an error can be harmless only if the appellate court is convinced beyond a reasonable doubt that the error is harmless." *Id.,* 476 Pa. at 405–06, 383 A.2d at 162. We further held that—"[t]he burden of establishing that the error was harmless beyond a reasonable doubt rests with the Commonwealth." *Id.,* 476 Pa. at 406 n. 11, 383 A.2d at 162 n. 11. "Whenever there is a 'reasonable possibility' that an error 'might have contributed to the conviction,' the error is not harmless." *Id.,* 476 Pa. at 409, 383 A.2d at 164, *quoting Commonwealth v. Davis,* 452 Pa. at 178, 305 A.2d at 719, *quoting Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). *See also Commonwealth v. Bricker,* 525 Pa. 362, 581 A.2d 147 (1990); *Commonwealth v. Haight,* 514 Pa. 438, 525 A.2d 1199 (1987).

underscores the importance of the "no-adverse-inference" charge, and is consistent with our holding today that the failure to give such a charge violates Article I, Section 9 of the Pennsylvania Constitution.

11. The United States Supreme Court in *Carter,* specifically declined the invitation to consider a similar harmless error argument—under the federal constitution, because it had not been presented to or considered by the Supreme Court of Kentucky. 450 U.S. at 304, 101 S.Ct. at 1121. *See also James v. Kentucky,* 466 U.S. 341, 104 S.Ct. 1830, 80 L.Ed.2d 346 (1984), where the Court again declined to resolve the issue under the Fifth Amendment, concluding that "if an evaluation of harmlessness is called for, it is best made in state court before it is made here." *Id.* at 351–52, 104 S.Ct. at 1837.

452

■    In the instant case, we cannot conclude that the Commonwealth has demonstrated, beyond a reasonable doubt, that the failure of the trial court to give the requested "no-adverse inference" instruction "might [not] have contributed to the conviction." *Story*, 476 Pa. at 409, 383 A.2d at 164. Although the Commonwealth introduced significant direct and circumstantial evidence to indicate that defendant was the individual who stabbed Michael Hawkins during the uprising in cell block G, there was certainly a colorable dispute over the facts surrounding the confrontation. Particularly, there was a significant question whether decedent Hawkins had instigated the fight. Appellant presented evidence to indicate that decedent, Hawkins, was "high on speed," pulled a homemade knife or "shiv" on appellant, and made the first assault. The evidence presented by both the Commonwealth and appellant indicated that 40 to 60 inmates joined in the insurgence along with appellant, chasing Hawkins towards the locked gate. Moreover, one of the prison guards confirmed that appellant was already bleeding, apparently from a neck and chest wound, at the time the confrontation occurred at the gate. Although two guards, Robert Quinones and Leroy Randolph, testified that they observed appellant stab Hawkins at the gate, the jury was certainly free to consider the defense's contention that someone else in the mob may have struck the fatal blow; or that appellant acted in self defense; or that Hawkins had provoked the incident and appellant was acting without premeditation or malice. Despite the significant evidence produced by the Commonwealth, we cannot state beyond a reasonable doubt that the failure of appellant to take the stand and the failure of the trial court to give the "no-adverse-inference" instruction might not have contributed to the verdict of murder in the first degree.[12]    Thus, under the law of Pennsylvania, we

12.  Our conclusion is supported by the fact that the jury returned with a question, after retiring, specifically requesting the trial court to clarify the terms "passion, malice, intent and specific intent." This confirms that the jury was grappling with the issues raised by defendant's defense. We cannot state beyond a reasonable doubt that the

conclude that the trial court's failure to give the instruction was not "harmless error."

■ We further conclude and now hold that given the importance of this issue for courts and litigants throughout Pennsylvania, the failure to give such a "no-adverse-inference" charge, when requested to do so in a timely fashion, *can never amount to harmless error.* Given the strong constitutional underpinnings of the "no-adverse-inference" charge, its omission may never be treated lightly. As then Justice Nix, now Chief Justice Nix, stated in a similar context in *Commonwealth v. Bishop,* 472 Pa. 485, 372 A.2d 794 (1977):

> The Commonwealth argues that even if the charge as a whole were defective it must be considered harmless error in view of the convincing evidence of guilt offered to support the verdict. We cannot accept this position. On prior occasions we have refused to ignore an incorrect, misleading, or incomplete charge on a matter as fundamental as the burden of proof in a criminal case, even where 'the evidence of guilt piles as high as Mt. Everest on Matterhorn, even if the District Attorney conscientiously believes the defendant to be as guilty as Cain, and no matter with what certainty the Judge views the culpability of the accused at the bar ...' *Id.,* 472 Pa. at 491, 372 A.2d at 797, *quoting Commonwealth v. Edwards,* 394 Pa. 335, 338, 147 A.2d 313, 315 (1959).

Because the right of a criminal defendant to decline to take the stand without adverse comment or inference is a fundamental one under Article I, Section 9, the failure of the trial court to give the "no-adverse-inference" instruction when so requested is far from the type of *"de minimis"* infraction which might form the basis for a "harmless error" finding. *See Story,* 476 Pa. at 410–11, 383 A.2d at 164–165.

failure of the defendant to take the stand, and the concomitant failure of the trial court to give the "no-adverse-inference" charge, did not weigh against the defendant in the jury's balancing of the facts.

## Waiver

■ The Commonwealth finally seeks to argue that, even if the failure to give the charge amounted to constitutional error by the trial court, the defendant somehow waived his right to challenge this omission, because defense counsel failed to object more vehemently when the charge was not given. We disagree. The record clearly reflects that, prior to the trial court's instructions to the jury, the defense attorney specifically requested that the jury be informed that no adverse inference could be drawn from defendant's failure to take the stand:

> THE COURT: If I understand the law correctly, the Court remains silent relative to the defendant not taking the stand unless the Court is requested to charge the jury.

> MR. JAMES: I would request that the jury be instructed that they draw no adverse inference on that.

> THE COURT: I thought that you would.

When the trial judge failed to instruct the jury as requested, defendant's counsel specifically renewed his request that the "no-adverse-inference" charge be given. The Court, erroneously believing that it had so instructed the jury, dismissed the request and moved on:

> THE COURT: ... Now, gentlemen, I feel that I have charged on everything. Are there any points. If you have any points or anything that you feel I have not charged on, would you come to sidebar.

> (The following occurred at sidebar between counsel and the Court:)

> ... MR. JAMES: We didn't mention any adverse inference from the defendant's failure to testify.

> THE COURT: I did say that.

The District Attorney urges that defendant "waived" his right to the instruction, because he did not thereafter "disagree" with the trial court's assertion that the charge had been given, and did not "ask that the court reporter review

his notes to see whether this point was in fact covered." We find no merit in this contention.

Pennsylvania enjoys a long heritage of mutual respect between the bench and bar. Trial counsel have long observed a practice of dignity and deference towards the rulings of the court, whether favorable or unfavorable. Indeed, failure to observe this tradition, as most attorneys recognize, may lead to the undesirable consequence of incurring the wrath of the court, or creating a churlish impression under the watchful gaze of the jury.[13]

We see nothing in the constitutionally grounded right to a "no-adverse-inference" charge, emanating from Article I, Section 9 of the Pennsylvania Constitution, which requires defense counsel to bite, scratch and plead in order to receive the mandated jury instruction. As long as the defendant or his attorney makes a timely request for such a charge, this is sufficient to preserve the issue for appeal.

Only if it is determined that the defendant or his counsel affirmatively requests that the "no-adverse-inference" instruction *not* be given, or requests such a charge and withdraws the request prior to the jury instructions being delivered, will the defendant be deemed to have waived his constitutionally protected right.[14] Absent any

13. A review of the record indicates that the trial judge moved quickly through each of defense counsel's objections, including the objection on the "no-adverse-inference" charge, and made clear when he wished to discuss any of the objections further, and when he believed they had been satisfactorily covered.

14. We are mindful that, for strategical reasons, a defendant and his or her counsel may determine that defendant's right to remain silent under Article 1, Section 9 is best served by requesting that a "no-adverse-inference" charge *not* be given to the jury, in order to avoid drawing attention to defendant's failure to testify. The "fundamental" right at stake here is the right not to be "compelled to give evidence against [oneself]" from which the "no-adverse-inference" rule derives. Thus, if defendant and his or her, counsel determine that the fundamental right to remain silent is best served by not drawing attention to defendant's silence, the derivative right (i.e., the "no-adverse-inference" instruction), may be validly waived. In such cases, an explicit waiver by defendant is required.

Although a defendant is free to make the choice whether to request, or waive, a "no-adverse-inference" charge prior to the trial judge

such evidence in the instant case, we find that the inadvertent failure of the trial court to provide the requested jury instruction mandates a new trial.

As we have found it necessary to reverse the judgment of sentence and remand the matter for a new trial we need not address appellant's remaining contentions of error.

Although we have discussed federal case law in this opinion, our decision rests squarely upon adequate and independent state grounds; to-wit, Article I, Section 9 of the Pennsylvania Constitution. Therefore, our decision constitutes a "plain statement" of Pennsylvania Constitutional law, and is not subject to federal review. *See, Murdock v. City of Memphis,* 87 U.S. (20 Wall.) 590, 22 L.Ed. 429 (1874); *Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983).

For the reasons set forth above, a new trial is mandated.

Reversed and remanded.

NIX, C.J., files a concurring opinion in which PAPADAKOS, J., joins.

FLAHERTY, J., joins in the majority opinion and the concurring opinion of NIX, C.J.

McDERMOTT, J., files a dissenting opinion.

NIX, Chief Justice, concurring.

I concur in the result reached by the majority, but I was unaware that there was any question that the "non-adverse inference" concept has been a part of the fundamental law of this Commonwealth. *Commonwealth v. Rolan,* 520 Pa. 1, 549 A.2d 553 (1988); *Commonwealth v. Young,* 477 Pa. 212, 383 A.2d 899 (1978); *Commonwealth v. Brenizer,* 467 Pa. 347, 356 A.2d 784 (1976); *Commonwealth v. Camm,* 443 Pa. 253, 277 A.2d 325, *cert. denied,* 405 U.S. 1046, 92 S.Ct. 1320, 31 L.Ed.2d 589 (1971).

instructing the jury, a defendant's change of heart after the jury has been charged will not be effective. *See, e.g., Commonwealth v. Danzy,* 225 Pa.Super. 234, 310 A.2d 291 (1973) (attempt to waive "no-adverse-inference" charge after the jury has been instructed is ineffectual).

First, its clear recognition as a right conferred under the federal constitution, U.S.C.A. Const. Amend. 5, *Carter v. Kentucky*, 450 U.S. 288, 101 S.Ct. 1112, 67 L.Ed.2d 241 (1981), necessitates the conclusion that it must be considered fundamental law in this Commonwealth. Second, as a long-time exponent of the concept of "new federalism", Nix, *Federalism In The Twenty–First Century—Individual Liberties In Search Of A Guardian*, In Federalism: The Shifting Balance 65 (J. Griffith Ed.1989), I have never questioned that, independent of the federal constitutional provision, the right to a "non-adverse inference" charge was encompassed in the protections afforded under article 1, section 9 of our state constitution. *See Commonwealth v. Brenizer*, 467 Pa. 347, 356 A.2d 784 (1976); *Commonwealth v. Kloiber*, 378 Pa. 412, 106 A.2d 820, *cert. denied*, 348 U.S. 875, 75 S.Ct. 112, 99 L.Ed. 688 (1954); *Commonwealth v. Thomas*, 275 Pa. 137, 118 A. 667 (1922); *Commonwealth v. Green*, 233 Pa. 291, 82 A. 250 (1912); *Commonwealth v. Brown*, 274 Pa.Super. 609, 418 A.2d 573 (1980); *Commonwealth v. Hodge*, 246 Pa.Super. 71, 369 A.2d 815 (1977); *Commonwealth v. Reichard*, 211 Pa.Super. 55, 233 A.2d 603 (1967). Thus, I am totally in accord with the conclusion drawn by the majority and the result reached. My only concern is the need for a lengthy exposition of well-settled concepts which are certainly not questions of first impression. Here, appellant was unquestionably entitled to a "non-adverse inference" charge, and since it was not given to the jury, an award of a new trial must be granted.

FLAHERTY, J., in addition to the majority opinion joins in this concurring opinion, PAPADAKOS, J., joins in this concurring opinion.

McDERMOTT, Justice, dissenting.

I agree with the majority that a "no adverse" charge must be given when requested. That is not, however, the essential issue here because the trial judge did not deny the charge; rather he believed it done when in fact it was not.

Ultimately, the question which the majority ponders is whether the mistaken absence of the charge can be harmless error.

Our doctrine of harmless error, found in the analysis of the United States Supreme Court, is clearly outlined by the majority. It is then put on the shelf, while the majority indulges itself in providing for a future the Supreme Court of the United States has not yet considered or commanded. In short, they now provide that this error, however plainly harmless, must yield to the majority's doctrine that it is never harmless if a "no adverse" charge is not given when requested; which is, of course, to say the facts of this nightmare murder were not proven, or could not be proven, to their satisfaction even if that which could not reasonably be expected to help is not done. To come to this conclusion they find that a "colorable" argument could be or was made that rendered the eyewitness testimony of the prison guards suspect. Their testimony was that the appellant had the knife that killed in his hand when he and a howling mob pursued the deceased against the prison gate yelling "kill him." The blood of the deceased was on that knife. To some that may raise "colorable" questions. The jurors who saw and heard the evidence, however, were not so easily persuaded.

The majority notes that whether the unintended failure to give a "no adverse" charge can be harmless, has not yet been decided in the United States Supreme Court. They choose nonetheless to forge ahead and announce that even if it does, Pennsylvania will not follow. They find that the Pennsylvania Constitution is a treasure trove of yet undiscovered rights. In their continued quest we can expect they will find what they will to make Pennsylvania a safer haven to do here what experience teaches should not be done anywhere. See e.g. *Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887 (1991) (eschewing the "good faith" exception in search and seizure); *Commonwealth v. Davis*, 526 Pa. 428, 586 A.2d 914 (1991) (imposing a more restrictive rule on the use of hearsay); and of course, *Commonwealth*

*v. Triplett*, 462 Pa. 244, 341 A.2d 62 (1975) (where more realistic voters were forced to amend the Pennsylvania Constitution to overrule this Court when it insisted that the right to lie was a precious liberty).

The majority has made it clear that a request for the charge requires the charge. It is conceivable that such error can recur despite the clear ruling, and prove as harmless as it proves here. For that reason, I would not slam the door shut by using the power to transcend what has not yet been mandated by the United States Supreme Court. The temptation to go beyond what is mandated by the United States Supreme Court by enlarging our State Constitution is a journey into areas best left to the legislature. Such journeys may make Pennsylvania unique and stranded in unworkable locks in the search for the truth: in many cases giving benefits, not constitutionally required, to those that count the rights of others as small change.

Finally, in passing on whether the issue was waived because counsel did not press the matter, the majority finds it to have been an unbecoming burden on counsel to press with firmness and appropriate courtesy for a proof, but inches away in the court reporter's machine. To my mind, for counsel not to do so was an abdication of his duty to the court and to his client. Here, counsel knew the charge was not given and the court was mistaken. To yield without more smacks of intention to hopefully leave an uncorrectable error in the case to the cost of his client, the court and, of course, seemingly last but certainly not least, the truth. The majority's view that one need not "scratch, scream or plead" for the truth is like minding one's business as the blind man walks off the cliff. The majority has apparently grown thinner skin than trial judges in the daily realities of trial where counsel are expected to press their points with "logic and vigor." Polite silence in the presence of a known and immediately reachable and rectifiable error is more than unbecoming.