607 A.2d 772

**COMMONWEALTH of Pennsylvania**

v.

**William C. EDWARDS, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 15, 1991.

Filed April 30, 1992.

Petition for Allowance of Appeal
Granted Sept. 24, 1992.

Suzanne M. Swan, Asst. Public Defender, Pittsburgh, for appellant.

Sandra Preuhs, Asst. Dist. Atty., Pittsburgh, for Com., appellee.

Before BECK, JOHNSON and HOFFMAN, JJ.

BECK, Judge:

The sole issue in this appeal is whether appellant William C. Edwards is entitled to a new trial because the trial court instructed the jury, despite defense objection, that it must draw no adverse inference from appellant's failure to testify. While it is clear that, pursuant to *Commonwealth v. Rasheed*, 392 Pa.Super. 280, 572 A.2d 1232 (1990) (en banc), the trial court's instruction to the jury was error, we conclude that the error was harmless beyond a reasonable doubt. Therefore, the judgment of sentence is affirmed.

Appellant was convicted of third degree murder following a jury trial. Post-verdict motions were denied and appellant was sentenced to ten to twenty years imprisonment. The evidence which formed the basis for the conviction is as follows. The deceased, Mary Edwards, was appellant's wife. On the day Mary Edwards was murdered, Mary Brown, the couples' daughter, had been visiting for Thanksgiving dinner. Appellant and his wife had a variety of disagreements that night and when the deceased left to escort her daughter home, appellant allegedly threatened, "I will take care of you when you get home". Ms. Brown did not see her mother alive again.

The next day, various family members tried unsuccessfully to contact Mary Edwards by phone. One daughter, Daisy, went to her mother's home and looked through the mail slot. She could see appellant in a reclining chair. The family assembled and called the police. When the police broke in they found Mary Edwards dead on the kitchen floor. The police also found appellant in a reclining chair, apparently very intoxicated and unresponsive. There was blood on his socks and shoes. A .38 snub nose revolver was on the table next to appellant. The police also noted that there were no signs of a break-in and that there was a German Shepard dog in the yard. An almost-empty bottle of vodka was on the dining room table. The police could not rouse appellant and he was taken to the hospital.

Ballistics testimony indicated that at least five rounds were fired from the recovered .38 revolver. Three spent shots were removed from the deceased's body and two spent cartridges were found near her on the kitchen floor. No fingerprints could be obtained from the gun. The blood on appellant's socks and shoes matched the decedent's blood type.

The defense presented no evidence. However, in closing argument to the jury, defense counsel argued that the Commonwealth failed to establish that it had been appellant who shot Mary Edwards and theorized:

You have a man found in the same house as the body. At some point after she had been shot and he was in the general vicinity and nothing more has been established.

You have a person who is in a recliner who would have been passed out for hour upon hour. A person who potentially might have been able to even stagger into the kitchen area where he hits blood on his sock before he goes back to the recliner.

He could have been in that recliner three hours or for 12 hours.

Something had happened in that 12–hour period. If something happened would William Edwards be aware of it? Most likely not. He was unaware of anything going on around him.

The jury was instructed on first degree murder, third degree murder and voluntary manslaughter. The jury was charged that voluntary intoxication could reduce murder in the first degree to third degree murder. The jury was also charged that to be voluntary manslaughter, the killing would have to be in the "heat of passion". The jury convicted appellant of third degree murder.

It is undisputed that defense counsel requested the court not to instruct the jury on the principle that "no adverse inference" could be drawn from appellant's failure to take the witness stand. Despite the request, the trial court instructed the jury as follows:

As he sits here with us this morning William Edwards is innocent of the charge of criminal homicide. He remains innocent unless and until you conclude that the Commonwealth has proven him guilty beyond a reasonable doubt.

He has no duty to defend himself. He does not have to prove his innocence. The Commonwealth has the burden of proving his guilt.

He has elected in this case to present no defense. And he has elected not to testify. That is his right, and you may draw no inference adverse to him from that election; for in a criminal trial under our system of justice the accused does not have to testify in a matter which he is accused.

■ The Commonwealth concedes that, in view of the principle enunciated in this court's en banc opinion in *Commonwealth v. Rasheed, supra,* it was error for the trial court to give the no-adverse-inference charge in the face of a defense request that the charge be omitted. The Commonwealth argues, however, that in light of the circumstances of this case, the error was harmless beyond a reasonable doubt. We agree.

The same case which articulated the rule that it is error for the court to give a no-adverse-inference charge in spite of a contrary defense request, also instructs us that the inquiry does not end there. In *Rasheed* this court stressed that we must then "look at the entire record of the trial at which the error occurred to determine if it is harmless error." 392 Pa.Super. at 285, 572 A.2d at 1235. With respect to the law of harmless error, this court has noted:

The harmless error doctrine reflects a fundamental principle which we think is particularly apt here, i.e., 'that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence, and promotes public respect for the criminal process by focusing on the fundamental fairness of the trial rather than on the virtually inevitable presence of immaterial error.' *Delaware v. Van Arsdall,* 475 U.S. 673, 681, 106

S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986). If this court can conclude beyond a reasonable doubt that the error complained of did not contribute to the verdict, no new trial is required.

*Commonwealth v. Weisman,* 401 Pa.Super. 62, 71, 584 A.2d 980, 985 (1990), appeal denied, 528 Pa. 644, 600 A.2d 195 (1991).

More specifically, the standard we use to judge the impact of the error in cases where a trial court ignores a defense preference that a no-adverse-inference instruction be omitted was articulated in *Rasheed.* In *Rasheed,* we stated that, "we must discern if the error in the charge, in any way, contributed to the verdict so as to render it less than a true verdict." 392 Pa.Super. at 287, 572 A.2d at 1236. Not only did the court in *Rasheed* refuse to find that in every case the giving of such an instruction over defense objection is reversible error per se, in addition it found that in that very case the error in instructing the jury was harmless. We see nothing in the instant case which distinguishes it from *Rasheed.* In fact, we find that the argument for a finding of harmlessness is even more persuasive.

■ It is the Commonwealth's burden to persuade this court that the error in the case was harmless beyond a reasonable doubt. In fact, the mere existence of the stringent "reasonable doubt" standard for finding harmless error casts the burden on the Commonwealth and already has provided the defendant (i.e., the one allegedly harmed by the error) with the benefit of the doubt.

■ In order to carry its burden the Commonwealth argues that, given the circumstances of this case, there was no reasonable possibility that the error contributed to the verdict. This argument is properly based on the facts of the case, the nature of the error, the defense strategy and closing argument and the overall impact of the no-adverse-inference instruction. The Commonwealth has also, in part, sustained its burden to establish harmlessness by effectively rebutting all of appellant's arguments that the error was

reversible. The burden of the Commonwealth is to persuade the reviewing court that based on the record a true verdict was reached. In fact, one commentator, in discussing the issue of "burdens" in the harmless error context, noted:

> Chief Justice Traynor of the California Supreme Court suggested that the entire issue of presumptions and burdens was largely meaningless in the harmless error context. In evaluating what effect, if any, an error had on the jury's verdict, the appellate court may look only to the record before it. The function of a party carrying the burden is simply to suggest, in light of that record, how prejudice may or may not have occurred.

LaFave and Israel, *Criminal Procedure,* § 26.6, 999 (1985) (citation omitted).

The Commonwealth has fully, and in our view persuasively, fulfilled its function in aiding this court in its harmlessness determination.

As noted above, we find the argument for finding harmless error here even more compelling than it was in *Rasheed.* In *Rasheed,* the charge was rape and the offense was alleged to have occurred at knife-point at the complainant's apartment. Rasheed and the complainant had known one another very slightly before the attack. Prior to the assault, complainant had invited Rasheed into her apartment for a beer. While corroborating physical evidence of intercourse was offered by the Commonwealth, the knife was never recovered and the use of the knife constituted the forcible compulsion aspect of the rape. Rasheed did not testify. The trial court instructed the jury that it could draw no adverse inference from the defendant's silence even though defense counsel opposed the instruction. However, although the *Rasheed* court held the giving of the instruction was error, it also found it to be harmless beyond a reasonable doubt. The *Rasheed* court stated that "[a]lthough the charge may have called attention to the fact that the appellant did not testify, no evidence was offered on behalf of the defendant and the charge did not call the

jury's attention to anything of which it was not aware". 392 Pa.Super. at 287, 572 A.2d at 1236.

■ Precisely the same conclusion must be reached in the instant case. No evidence was offered on appellant's behalf here. We find appellant's argument that the jury's verdict of third degree murder "may have been a compromise" and that the Commonwealth's case was "significantly bolstered by the court-underscored silence of Mr. Edwards" wholly unpersuasive. The third degree murder verdict completely comported with the evidence of voluntary intoxication coupled with a killing done with malice, although the record also contains evidence from which the jury could have inferred premeditation. The record does not support the conjectural suggestion that the jury "compromised" in reaching its verdict, even if we were to assume, as does appellant, that the court's instruction did highlight appellant's silence.

Furthermore, in our view, it is highly speculative to suggest that in the absence of the court's instruction the jury would not have noticed or remembered that appellant did not testify. Appellant argues that the judge's instruction "highlighted" his silence. On this point, we agree with Judge Kelly who stated in his concurring and dissenting opinion in *Rasheed:*

[W]e can hardly expect a jury of twelve reasonably intelligent citizens to overlook the fact that the defendant, whose fate they are to determine, sat silent throughout the proceedings.

392 Pa.Super. at 291, 572 A.2d at 1238 (Kelly, J., concurring and dissenting).

■ The rationale underlying the cautionary instruction is the fear that the jury will be "left free to draw negative inferences from the defendant's decision to exercise his or her constitutional privilege" by not testifying. *Commonwealth v. Lewis,* 528 Pa. 440, 450, 598 A.2d 975, 980 (1991). It is the protection against this "insidious danger" which underlies the supreme court's recent, stern admonition in

*Lewis* that "[j]uries must be told in no uncertain terms that no adverse inference may be drawn from a defendant's failure to take the stand....". *Id.*

Here, the trial court eliminated, insofar as is possible, the "insidious danger" that the jury would negatively assess appellant's silence against him by instructing them that the law forbids them to do so. To conclude otherwise would be to assume that the jury failed to adhere to the court's instructions. Thus, by giving the no-adverse-inference instruction, albeit in the face of defense opposition, the trial court protected against the primary danger associated with appellant's exercise of his constitutional right to remain silent.

Having eliminated the danger that appellant's silence would be used against him by the giving of a cautionary instruction, what harm to the integrity of the jury's verdict remains from the trial court's failure to honor appellant's request? In light of the particular circumstances of this case, it is especially unlikely that the jury even awaited appellant's "version" of the events. When the police and neighbors discovered the victim's body, appellant was comatose in the apartment apparently from intoxication. He remained in that state for quite some time. The thrust of the defense was that appellant was not the killer because he was too incapacitated to have shot his wife or even to know what had happened. Appellant's chief argument was that appellant "was unaware of anything going on around him", that anyone could have come in to kill the victim without appellant knowing it and that, therefore, he was incognizant of how the death actually occurred. Therefore, appellant's silence was entirely consistent with his theory of the case and the jury would not reasonably have expected exculpatory testimony from his lips. Certainly, if this court found harmless error in *Rasheed*, where the defendant was the only witness capable of giving evidence challenging the complainant's claim of forcible intercourse and in support of a consent defense, the error is harmless here, where appel-

lant's failure to take the stand was a natural outgrowth of his own defense strategy.

Appellant conjectures that the jury may have compromised on the verdict. We find this type of speculation unpersuasive. The jury was instructed regarding the Commonwealth's unshifting burden of proof and told that it could draw no negative inferences from defendant's choice not to testify. The defense was that the Commonwealth's case was purely circumstantial and that appellant knew nothing of the crime. Nothing in the case indicates that the jury was grappling with any issues regarding intent or provocation which even arguably could have reduced its verdict to voluntary manslaughter. Other than the voluntary intoxication evidence which apparently reduced the verdict from first degree murder to third degree murder, there was not another piece of evidence which could have led the jury reasonably to conclude that appellant killed in the heat of passion or was provoked. We find it impossible to conclude that the trial court's error in giving the cautionary instruction could have, in any way, contributed to the verdict or negatively influenced the jury's deliberations.

Judgment of sentence affirmed.

JOHNSON, J., files a dissenting Opinion.

JOHNSON, Judge, dissenting.

I agree with the Majority's determination that the trial court committed error by instructing the jury to draw no adverse inference from Edwards' failure to testify despite defense objection. See *Commonwealth v. Rasheed*, 392 Pa.Super. 280, 572 A.2d 1232 (1990), *appeal pending* 172 E.D. Appeal Docket 1991. However, I am unable to join in the conclusion that the error was harmless, because I am not convinced that this instruction could not have contributed to the verdict rendered. Accordingly, I must dissent.

The Majority correctly determines that, in *Rasheed*, this court held, *en banc*, that a trial court commits error by instructing the jury that no inference is to be drawn from a

defendant's decision not to testify where the defendant specifically and timely requests that no such instruction be given. *See also, Commonwealth v. Danzy,* 225 Pa.Super. 234, 310 A.2d 291 (1973). The Majority also correctly determines that, under *Rasheed,* a defendant is entitled to a new trial unless that error is found to have been harmless. *Rasheed,* 392 Pa.Super. at 285, 572 A.2d at 1235. I depart from that part of the Majority's opinion, however, which concludes that the error complained of was harmless.

In *Commonwealth v. Story,* 476 Pa. 391, 383 A.2d 155 (1978), our Supreme Court held that an error can only be harmless if the appellate court is convinced beyond a reasonable doubt that the error is harmless. *Id.* 476 Pa. at 405–06, 383 A.2d at 162. The court went on to define an error as harmless where it could not have contributed to the verdict. *Id.* 476 Pa. at 409, 383 A.2d at 164. "Whenever there is a 'reasonable possibility' that an error 'might have contributed to the conviction,' the error is not harmless." *Id.* 476 Pa. at 409–10, 383 A.2d at 164, citing *Commonwealth v. Davis,* 452 Pa. 171, 178, 305 A.2d 715, 719, quoting *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The Court has recently reiterated these principles in *Commonwealth v. Lewis,* 528 Pa. 440, 452–453, 598 A.2d 975, 981 (1991).

The burden of establishing that an error was harmless rests with the Commonwealth. *Story,* 476 Pa. at 406 n. 11, 383 A.2d at 162 n. 11 (citing *Chapman; Davis; Fontaine v. California,* 390 U.S. 593, 88 S.Ct. 1229, 20 L.Ed.2d 154 (1968)). Having carefully reviewed the Commonwealth's brief in this case, it is apparent to me that no attempt has been made to construct an argument which would lead to a conclusion of harmless error. Instead, the Commonwealth has chosen to merely respond to Edwards' three contentions that the error was not harmless. Therefore, I have difficulty ascertaining the basis upon which the Commonwealth attempts to carry *its* burden. Nevertheless, my review of the Commonwealth's responses to Edwards' arguments reveals the following assertions in favor of a conclusion that

the error was harmless: 1) the evidence of guilt was overwhelming; 2) the instruction was consistent with the trial strategy of the defense; and 3) the instruction did not prevent the rendering of a "true verdict."

I would reject the Commonwealth's contention, and the Majority's conclusion, that overwhelming evidence of Edwards's guilt rendered the error harmless. Initially, I would note that, in *Rasheed*, where the appellant also claimed prejudice on the grounds that the jury had been instructed on the "no adverse inference" charge over his objection, the majority concluded that the proper focus in such cases is *not* upon whether the evidence is overwhelming. *Rasheed*, 392 Pa.Super. at 287 n. 6, 572 A.2d at 1236 n. 6. This precedent forces the conclusion that an overwhelming evidence argument alone cannot succeed.

In any event, I have reviewed the transcript of the trial in its entirety, and, although I find that the evidence produced by the Commonwealth was clearly substantial, I am unable to say with assurance that honest, fair-minded jurors could not have rendered a different verdict. *See Story*, 476 Pa. at 413, 383 A.2d at 166. The jury was instructed on the elements of first degree murder, third degree murder and voluntary manslaughter, and it returned a guilty verdict on the charge of third degree murder. To have rendered that verdict, the jury had to have found that the Commonwealth failed to prove beyond a reasonable doubt that the killing was "intentional," as that term is defined in 18 Pa.C.S. § 2502(d). ("Killing by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing"). To reject the charge of voluntary manslaughter, the jury also had to find that the defendant had not been provoked. See 18 Pa.C.S. § 2503(a). While I believe that the evidence presented was sufficient to support the verdict actually rendered, it is not so clear that the evidence pointed overwhelming to third degree murder as opposed to voluntary manslaughter, and that the trial court's error could not have contributed to the jury's decision. Yet, it is the Commonwealth's burden to demonstrate exactly that. *Sto-*

*ry,* 476 Pa. at 409, 383 A.2d at 164. Hence, I cannot agree with the majority's conclusion that the error was harmless because the evidence of guilt was overwhelming.

The Commonwealth also contends that the "no adverse inference" instruction was harmless because it was consistent with the strategy of the defense. The Commonwealth argues that the defense consisted of a claim that, because of Edwards' severe intoxication on the night of the murder, he was unable to shed any light on what had happened.

It is true that, during closing argument, defense counsel stressed Edwards' drunken condition and argued that the evidence was consistent with an intrusion by a third person who committed the murder while Edwards was comatose. That defense, however, would not preclude Edwards from testifying as to issues which arose during the trial. Although Edwards' decision not to testify was arguably consistent with having been comatose *during the murder,* it simply does not follow that Edwards obviously knew *nothing* which could further the jury's understanding and consideration of the events of the evening. For example, there was testimony that Edwards and the victim were involved in a heated disagreement when their daughters arrived for dinner, but no one who testified explained the nature or cause of that disagreement. Similarly, no one was able to testify as to Edwards' motivation for initiating a scuffle with his daughter after dinner outside the house. Consequently, the instruction may have reminded the jury that Edwards chose not to take the witness stand to explain what was clearly within his knowledge. Further, the jury may have believed that Edwards should have testified that he could remember nothing. Their awareness that he chose not to testify may have been heightened by the court's decision to instruct them that Edwards' choice not to testify was Constitutionally guaranteed. Accordingly, I would also reject the Commonwealth's argument that consistency between Edwards' trial strategy and the instruction rendered the error harmless.

Finally, the Commonwealth argues that *Rasheed* dictates that a charge regarding "adverse inferences" is harmless unless it prevented the jury from rendering a true verdict. *Id.* 392 Pa.Super. at 287, 572 A.2d at 1236. The Commonwealth contends that this court may infer that drawing the jury's attention to Edwards' failure to testify could not have "bolstered" the Commonwealth's case because "the verdict of guilty of third degree murder is completely consistent with the evidence presented at trial and the instructions of the court." Appellee's Brief at 14. Where other reasonable verdicts could have been rendered, however, consistency between the evidence and the verdict sheds little light on whether the error could have contributed to the verdict. I am simply unable to conclude beyond a reasonable doubt that this error could not have contributed to the jury's selection of third degree murder, while rejecting the charge of voluntary manslaughter.

My conclusion that the Commonwealth has failed to demonstrate that the error was harmless is guided by our Supreme Court's decision in *Commonwealth v. Turner,* 499 Pa. 579, 454 A.2d 537 (1982), wherein the Court stated: "The view of this Court that there exists a strong disposition on the part of lay jurors to view the exercise of the Fifth Amendment privilege as an admission of guilt is well established." *Id.* 499 Pa. at 581–82, 454 A.2d at 539. That Court continued:

> "We would be naive if we failed to recognize that most laymen view an assertion of the Fifth Amendment privilege as a badge of guilt." *Walker v. United States,* [404 F.2d 900 (5th Cir.1968)], ... It is clear that "[t]he privilege against self-incrimination would be reduced to a hollow mockery if its exercise could be taken as equivalent either to a confession of guilt or a conclusive presumption of perjury." *Slochower v. Board of Higher Ed. of N.Y.,* [350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692].

*Turner,* 499 Pa. at 583, 454 A.2d at 539, *quoting Commonwealth v. Haideman,* 449 Pa. 367, 371, 296 A.2d 765, 767 (1972).

502

Accordingly, I would conclude that the Commonwealth has failed to demonstrate beyond a reasonable doubt that this error could not have contributed to the verdict. I would reverse judgment of sentence and remand for further proceedings.