586 A.2d 914

COMMONWEALTH of Pennsylvania, Appellant,

v.

Harvey DAVIS, Appellee.

Supreme Court of Pennsylvania.

Argued Dec. 11, 1989.

Decided Feb. 6, 1991.

Reconsideration Denied April 4, 1991.

429

Gaele McLaughlin Barthold, Deputy Dist. Atty., Ronald Eisenberg, Chief, Appeals Div., Hugh Burns, Philadelphia, for appellant.

John W. Packel, Chief, Appeals Div., Karl Baker, Philadelphia, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION IN SUPPORT OF AFFIRMANCE

FLAHERTY *, Justice.

In this appeal we reconsider the due process requirements pertaining to juvenile proceedings.

* This opinion was reassigned to this author.

On May 6, 1985, the appellee, Harvey Davis, a juvenile, was adjudicated a delinquent by the late Honorable Wilhelm F. Knauer, Jr., on a charge of behavior constituting simple assault. Judge Knauer placed Davis on probation with the condition that he return to school without absences, lateness, or suspensions, and directed his probation officer to file a motion for unsatisfactory probation should Davis have more than two unexcused absences from school.

On September 16, 1985, Davis was brought before Judge Knauer on a motion for amendment or review of probation. Davis's probation officer, Patricia Simon, did not appear at the hearing. Instead, Frank Davis, a supervisor in the juvenile division of the family court, appeared and testified as follows:

THE COURT: You have been supervising this young man?

MR. DAVIS: Miss Patricia Simon is the probation officer, but I got involved with the case because of his father some time ago, and there was quite a bit of disturbance in the home between Harvey and his father and Harvey's father advised me that Harvey pulled a knife on him—

MR. MILLER: Objection, respectfully.

THE COURT: Overruled.

MR. DAVIS: And he protected himself, and that there were threats against Harvey and Harvey didn't want to stay home, and as a result of that, I felt it the best thing to bring the case back to Court, and, perhaps, commit him somewhere to find out just what was going on, because, also, the school report wasn't good.

On the sole basis of this hearsay testimony, Judge Knauer revoked Davis's probation and committed him to the Glen Mills Diagnostic Center.

Davis appealed to the Superior Court, which, sitting en banc, reversed the juvenile court order revoking his probation. 377 Pa.Super. 46, 546 A.2d 1149. We granted allocatur to determine whether the hearsay evidence quoted above was admissible in the juvenile hearing.

Any difficulty in answering this question springs primarily from two factors. First is the hybrid nature of a probation revocation hearing, which has elements approximating the adjudicatory stage of a juvenile proceeding as well as elements partaking of the dispositional phase of the juvenile process. Determining whether to treat the probation revocation as adjudicatory or dispositional is tantamount to determining the ultimate issue in the case, *viz.*, whether traditionally inadmissible hearsay testimony can be the sole basis for a deprivation of liberty. Second, the guidance of precedent is almost entirely limited to analyses under the federal Constitution. That is, most cases which shed light on the question[1] are analyses of the strictures imposed by the due process clause of the Fourteenth Amendment of the United States Constitution. Although binding, the federal due process clause may not be controlling if the due process clause of the Pennsylvania Constitution sets a higher standard.

The Pennsylvania Constitution was adopted prior to the federal Constitution, and using the language of the Magna Charta ("Nullus liber homo capiatur, vel imprisonetur, aut dissaisiatur, aut utlagetur ... nisi per legale judicium parium suorum, vel per legem terrae") which has been incorporated virtually word for word in Article I, Section 9, states that an accused cannot "be deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land." The phrase "law of the land" is equivalent to the due process language in the federal Constitution, and has been referred to as "the due process clause of our state constitution." *Commonwealth v. Heck*, 517 Pa. 192, 194–95, 535 A.2d 575, 576 (1987).

If it were clear that juvenile probation revocation is adjudicatory in nature, our task would be easy; it would be

1. *See Kent v. United States,* 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966); *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *McKeiver v. Pennsylvania,* 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971); *Breed v. Jones,* 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975).

equally simple if the proceeding is clearly dispositional. In adjudicatory proceedings, hearsay evidence is prohibited by state statute, 42 Pa.C.S. § 6338(b), and the due process clause of the United States Constitution, *In re Gault,* 387 U.S. 1, 57, 87 S.Ct. 1428, 1459, 18 L.Ed.2d 527, 562–63 (1967). In dispositional proceedings, the state statute permits the use of hearsay evidence, 42 Pa.C.S. § 6341(d), and the United States Supreme Court has not interpreted the federal Constitution to prohibit its use, *In re Gault,* 387 U.S. at 13, 87 S.Ct. at 1436, 18 L.Ed.2d at 538.

Nomenclature, however, does not determine the nature of the proceeding. Merely calling it adjudicatory, for instance, does not make it so. In reality, juvenile probation revocation is neither adjudicatory nor dispositional, strictly speaking, but has elements in common with both. Analogizing to adult criminal proceedings, we recognize that due process requires in probation and parole revocation proceedings some but not all of the safeguards necessarily afforded criminal defendants at trial, due to the unique character and purpose of the revocation proceeding. *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). Thus it is fruitless to attempt to categorize the revocation proceeding as adjudicatory or dispositional, when it is neither; it is necessary, instead, to isolate the elemental, bedrock constituents of the proceeding in order to identify and specify the safeguards required by due process.

What is critical to our decision is that Davis's probation revocation required the proof of new facts constituting misbehavior and resulted in the forfeiture of a substantial liberty interest. We have stated before: "Fundamental due process requires that no adjudication be based *solely* upon hearsay evidence. This tenet of our law is not a 'technicality,' but rather lies at the root of the truth determining process." *Commonwealth, Unemployment Compensation Board of Review v. Ceja,* 493 Pa. 588, 619, 427 A.2d 631, 647 (1981) (Flaherty, J., concurring) (emphasis added).

The deprivation of life, liberty, or property *solely* upon hearsay evidence offends our sense of justice and our concept of due process.

The suspect nature of hearsay evidence has been a consistent concern of this Court. For example, in *Commonwealth v. Baez*, 494 Pa. 388, 431 A.2d 909 (1981), we reversed a first-degree murder conviction due to admission of hearsay evidence. We stated: "The statement in question here is precisely the type of unreliable out-of-court declaration the hearsay rule was designed to exclude." *Id.* at 396, 431 A.2d at 913. In *Johnson v. Peoples Cab Co.*, 386 Pa. 513, 515, 126 A.2d 720, 721 (1956), the late Justice Musmanno wrote for a unanimous court that "nothing is more adamantly established in our trial procedure than that no one may testify to what somebody else told him. He may only relate what is within the sphere of his own memory brought to him by the couriers of his own senses." *See also Black's Law Dictionary* (4th ed.) ("The very nature of [hearsay] evidence shows its weakness, and it is admitted only in specified cases from necessity.").

Whenever the liberty of an individual, juvenile or adult, is at risk, fundamental due process is essential. If there is doubt that the due process clause of the Fourteenth Amendment of the United States Constitution forbids the use of hearsay in a juvenile probation revocation hearing,[2] there is no doubt that the due process clause of the Pennsylvania Constitution prohibits the deprivation of liberty solely on the basis of hearsay evidence.

The Court being equally divided, the judgment of the Superior Court is affirmed.

LARSEN, J., files a concurring opinion.

NIX, C.J., files a dissenting opinion, joined by McDERMOTT and PAPADAKOS, JJ.

McDERMOTT, J., files a dissenting opinion.

CAPPY, J., did not participate in the consideration or disposition of this case.

**2.** See cases cited in note 1 supra.

LARSEN, Justice, concurring.

I concur in the Opinion in Support of Affirmance authored by Mr. Justice Flaherty but write separately to emphasize that the United States Supreme Court's decision *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), directly impacts on the question presented in this case.

In *Gault*, a juvenile, who like Harvey Davis, *was previously adjudged delinquent and on probation,* was taken into custody on an additional charge of making lewd telephone calls to a neighbor. The trial court conducted a hearing in which the recipient of the call did not testify. Instead, a probation officer testified concerning the alleged incident as it was related to him by the victim. Although Gault was on probation, the proceedings for which he was brought before the court and charged with additional misconduct were not characterized as "dispositional" in nature. The Supreme Court held that in juvenile proceedings, "a determination of delinquency and an order of commitment to a state institution cannot be sustained in the absence of sworn testimony subjected to the opportunity for cross-examination". *Id.* at 57, 87 S.Ct. at 1459, 18 L.Ed.2d at 562-563.

In this case, Harvey Davis, was brought before the court on a motion to amend probation. During that proceeding he was confronted with the hearsay allegation that he had committed additional misconduct of a serious nature (threatening his stepfather with a knife). Fairness and due process require that a person standing in judgment for such misconduct be permitted to confront and cross-examine the witnesses against him.

In *Gagnon v. Scarpelli*, 411 U.S. 778, 782, 93 S.Ct. 1756, 36 L.Ed.2d 656, 661-662 (1973), the United States Supreme Court recognized that "probation revocation, like parole revocation is not a stage of a criminal prosecution, but does result in the *loss of liberty* ". That Court, therefore, held that a probationer like a parolee is entitled to a preliminary hearing and a final revocation hearing under the conditions

specified in *Morrissey v. Brewer*, [408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)]—those conditions being the minimum requirements of due process including the right to confront and cross-examine adverse witnesses. If the Constitution compels the right to confrontation in "adult" probation revocation hearings, no less is required with respect to a child in a "juvenile" probation revocation hearing predicated upon allegations of additional misconduct.

I also write separately due to the majority's undue emphasis on the word "solely" in stating that "fundamental due process requires that no adjudication be based *solely* upon hearsay evidence" and that "the deprivation of life, liberty, or property *solely* upon hearsay evidence offends our sense of justice and our concept of due process" Majority op. at p. 916 (emphasis in original). I part with the majority's analysis to the extent that it suggests that a person can be deprived of liberty where hearsay evidence is offered in conjunction with "some other evidence".

The long established rule regarding the admissibility of hearsay evidence is that,

"the proponent of such testimony must point to some exception to the hearsay rule which would justify the court in departing from the traditional notion that a party should not be deprived of the guaranty of truthfulness resulting from the oath of the declarant and the opportunity to cross-examine the declarant in order to test the accuracy of the observations upon which it is based".

*Carney v. Pennsylvania Railroad Co.*, 428 Pa. 489, 240 A.2d 71 (1968). Certainly, hearsay evidence which does not fall into any one of the recognized exceptions to the hearsay rule is inadmissible at any criminal or quasi-criminal proceeding, juvenile or adult.

NIX, Chief Justice, dissenting.

I do not agree that the issue raised in this appeal is the "quality" of the evidence which led the hearing court to revoke the probation and recommit the minor for further evaluation. If the action of the late Judge Knauer was properly viewed as being adjudicative in nature, I then

would concur with the majority view that hearsay evidence cannot sustain a finding of the minor's wrongdoing. The record does not justify the conclusion that Judge Knauer revoked the probation in response to the hearsay allegation of the minor's assault upon his father. Rather, it appears that the court's request for diagnostic testing at Glen Mills Diagnostic Center was in response to a determination based upon ample evidence that the home environment was not providing the support for the minor, for whatever reason, intended by the initial placement.[1]

Unlike the traditional adversarial guilt-determining process, the purpose of this proceeding was to ascertain the best interest of the minor. In this setting "... the conception of the kindly judge ...," *Application of Gault*, 387 U.S. 1, 13, 87 S.Ct. 1428, 1436, 18 L.Ed.2d 527 (1967), must be fully recognized. This approach is not only preferred because it is tailored to provide for the best interest of the juvenile, but it also is the most effective means in view of the resources available to entertain these questions. The instant case illustrates the validity of this premise.

If the hearing court's decision had depended solely upon the truth of the hearsay assertions as to Harvey's conduct, I would have concluded, as does the majority, that Article I, Section 9 of our Constitution has been compromised. However, I do not view this to be the posture of the case. Here the juvenile had been returned to the family home upon condition that he attend school "... without absences, lateness, or suspensions, and [the court] directed his probation officer to file a motion for unsatisfactory probation should Davis have more than two unexcused absences from school." Majority op. p. 430. This order obviously envisioned that the minor would fit within the disciplinary structure maintained within that household. It also reflected the court's assessment that the household would

---

1. The court's order for placement at Glen Mills Diagnostic Center should not be viewed as a revocation of probation. It is a phase in a reevaluation process to determine what would be in the best interest of this child, which determination would not necessarily exclude continued probation in another setting.

provide a structure for the rearing of a socially compatible individual. The father's complaint, without regard to its validity or assigning blame to the minor, clearly reflected that the placement was not serving the intended purposes. As the social worker indicated, "I felt it the best thing ... also, the school report wasn't good." Majority op. p. 430.

The placement at the Glen Mills Diagnostic Center should not be viewed as a punitive response. The liberty interest of a minor cannot be equated with that of an adult. Unlike the adult, the child is subject to the appropriate and responsible directions of the parent or those standing in that position. Where that minor had previously been adjudged delinquent, as was the case here, the liberty interest is further circumscribed. The information supplied to the court amply supported the conclusion that the home placement was not providing the support and stability expected. The Center afforded the opportunity to observe the minor and to determine his needs for a more appropriate placement.

An assumption that the court's order reflected a finding of misbehavior on the part of the minor is misplaced. The minor had been adjudicated delinquent in a prior proceeding and placed on probationary status in his home setting. A review of this initial placement established that it was not serving the intended objectives. The instant order was merely an effort to determine a more suitable placement that would serve to provide a positive environment for this minor. The hearsay statement of the father was not offered to prove improper conduct on the part of the minor but, rather, to reflect the discordant environment of the home.

I, therefore, dissent.

McDERMOTT and PAPADAKOS, JJ., join this opinion in support of reversal.

McDERMOTT, Justice, dissenting.

The question before us is whether hearsay evidence is admissible at a disposition hearing in juvenile proceedings.

The case at hand centers the issue. A disposition hearing is a hearing that follows adjudicatory proceedings wherein the court, finding delinquency, assumes jurisdiction of the juvenile and then considers appropriate remedies addressed to the best interest of the minor. A further disposition hearing may be necessary, as here, to test the effectiveness of probationary terms imposed following the initial adjudication.

The premise and authority for a dispositional hearing can only follow from a legally posited adjudication. In an adjudicatory hearing, the juvenile is entitled, with the exception of trial by jury, to the full panoply of constitutional rights guaranteed an adult defendant, whose liberty may stand forfeit.[1] That is that no juvenile, or adult, may lose his or her freedom except by competent, relevant, legally posited evidence. No consideration of one's "best interest" can substitute for such evidence. No matter what the will to save may be, no matter what salutary purpose is envisioned, without legally posited evidence proved beyond a reasonable doubt, neither child nor adult can lose their freedom to be themselves.

Once, however, a juvenile is found delinquent and subject to the jurisdiction of a court, distinctions of purpose prevail. Distinctions founded on the nature of a juvenile and the duties of the state toward one not yet master of their life. Our law does not consider delinquency a crime, we conceive it rather a call and occasion for help. Delinquency is a term that eases and changes the focus of consequences. What

1. *See Application of Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) (in adjudication stage of juvenile proceeding, juvenile is entitled to confront his accuser, cross-examine witnesses, to receive notice of the charges, to be represented by counsel and to be free of the constraints of self-incrimination. *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (at adjudication stage of juvenile proceeding, proof beyond a reasonable doubt is necessary to find the juvenile delinquent). *McKiever v. Pennsylvania,* 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971) *affirming* 438 Pa. 339, 265 A.2d 350 (1970) (the constitution does not guarantee the right to trial by jury in juvenile proceedings).

for adults would be specific offenses sanctioned by specific penalty, is in delinquency proceedings converted into considerations dedicated to the best interests of the juvenile. Because we accept that youth has its excuses and its promise, we seek to teach, direct, help and save the young whose troubles bring them to the courts. To do so, we neither hold them or our courts at a disposition hearing to the strictness of law that would prevent or hinder that saving purpose. We take guidance from the Supreme Court of the United States. In *Schall v. Martin,* 467 U.S. 253, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984):

> The juvenile's ... interest in freedom from institutional restraints ... is undoubtedly substantial ... But that interest must be qualified by the recognition that juvenile's, unlike adults, are always in some form of custody. Children, by definition, are not assumed to have the capacity to take care of themselves. They are assumed to be subject to the control of their parents, and if parental control falters, the State must play its part as *parens patriae.* In this respect, the juvenile's liberty interest may, in appropriate circumstances, be subordinated to the State's *parens patriae* interest in preserving and promoting the welfare of the child.

467 U.S. at 265, 104 S.Ct. at 2410. So likewise the state legislature touching this sensitive issue has also provided that once a juvenile is adjudicated a delinquent, the court must then hear evidence, in the dispositional phase, "as to whether the child is in need of treatment, supervision, or rehabilitation." 42 Pa.C.S. § 6341(b). In this disposition hearing,

> "[A]ll evidence helpful in determining the questions presented, including oral and written reports, may be received by the court and relied upon to the extent of its probative value even though not otherwise competent in the hearing on the petition."

42 Pa.C.S. § 6341(d).

In the case at hand the appellee, previously adjudged delinquent, and on probation was called before the court on

a complaint by his father to a probation officer that the appellee had threatened his life with a knife.[2] The father did not appear and the complaint was transmitted to the court by the probation officer. A disposition hearing that revokes probation or imposes new restrictions on liberty because probation has allegedly been violated must at a minimum provide due process on the question of whether probation has in fact been violated. *Gault and Winship, supra.* The question is therefore whether the use of hearsay evidence at such a proceeding is a violation of the due process required. In *Gault* the United States Supreme Court in an apt tribute to the hundreds of juvenile judges whose daily concern is troubled youth, would not shield a child from that concern and care by imposing strict due process requirements.

> While due process requirements will, in some instances, introduce a degree of order and regularity to juvenile court proceedings to determine delinquency, and in contested cases will introduce some of the elements of the adversary system, nothing will require that the conception of the *kindly juvenile judge* be replaced by its opposite, nor do we here rule upon the question whether ordinary due process requirements must be observed with respect to hearings to determine the disposition of the delinquent child.

387 U.S. at 27, 87 S.Ct. at 1443. The concept of the "kindly judge" is best suited for the interest of the child. Their skill, experience and purpose to aid is best relied upon in determining the uses of hearsay evidence in such circumstances. That is not to say that one offering hearsay evidence should be left unchallenged. They should be strictly examined to determine the validity of its source and its probable truth. The judge in the exercise of his or her knowledge of the case, the background of the original charge, the reports on, and personal observation of the juvenile and all the surrounding circumstances is in the best

---

2. The appellee had not been arrested nor accused of any crime nor was he accused of violating any term of his probation.

position to determine the uses of such hearsay evidence. We must presume that such skilled and devoted judicial officers, guided by law to help where help can be given, will do what is best for all concerned.  There is not only no constitutional impairment for such uses in mandates of the United States Supreme Court, indeed, to the contrary, there is encouragement.  The Pennsylvania Legislature likewise provided for the possible uses of hearsay evidence, as the occasion and circumstances may prove necessary and proper for the welfare and future of the juvenile.[3]

In derogation of the holding of the United States Supreme Court and the specific statutory authority of the Pennsylvania Legislature, the majority has interposed itself in the more than one thousand dispositional hearings per year in Philadelphia alone.

Before Magna Carta was, juveniles have been favored and protected at law and in Pennsylvania since the inception of the Juvenile Court in 1893.  One would suppose the United States Supreme Court has supplanted the Runnemede Barons in defining due process.  One can now only guess at what this preterite majority will do with the forty exceptions grafted on the hearsay rule since the late King John.[4]  Doubtless they tremble now to know that juveniles in Juvenile Court are not entitled to trial by jury.  *McKeiver v. Pennsylvania*, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971).

I vigorously dissent that the majority, with the scratch of a goose quill pen, will reduce juvenile proceedings to an adversarial contest in dispositional hearings, where help and not guilt is at issue.  They evince an unworthy distrust of the dedicated juvenile judges of Pennsylvania which the majority's experience in such matters cannot justify.

The briefest reading of the history of juvenile proceedings in Pennsylvania and the United States should have stifled this atavistic reach beyond the Pennsylvania Legisla-

---

**3.**  42 Pa.C.S. § 6341(d).

**4.**  For an excellent precis of the hearsay exceptions, see D. Bender, *The Hearsay Handbook* (1983), chapter 2.

ture and the holding of the Supreme Court of the United States.

I join in the dissent of NIX, C.J.