686 A.2d 1321

COMMONWEALTH of Pennsylvania,

v.

Michael PRESLEY, Appellant.

Superior Court of Pennsylvania.

Argued Nov. 14, 1996.

Filed Dec. 16, 1996.

Peter Rosalsky, Assiatant Public Defender, Philadelphia, for appellant.

Karen A. Brancheau, Assistant District Attorney, Philadelphia, for the Commonwealth, appellee.

Before CIRILLO, President Judge Emeritis, and DEL SOLE and OLSZEWSKI, JJ.

OLSZEWSKI, Judge:

A heavy snow blanketed Philadelphia on the morning of February 11, 1994. Nevertheless, Kwan Yul Choi diligently stood behind the counter of his Family Seafood Restaurant on South 7th Street. At approximately 3:00 p.m., appellant Michael Presley, known on the street as "Grimace," entered Mr. Choi's establishment. Mr. Choi, who had earlier banished Presley, kindheartedly admitted the youth into the business because "it was cold outside." N.T. 7/26/95. Mr. Choi would pay with blood for his concern. Immediately upon entry, Presley began spewing profanities, driving the paying customers out of the restaurant. Mr. Choi, witnessing his patrons' departure, ordered Presley to vacate the store. Presley refused. Mr. Choi again instructed the youth to leave. This time, Presley moved towards the front door and grabbed the doorknob. In a final act of defiance, Presley spun around and aimed a revolver at the proprietor. Presley pulled the trigger

and a bullet ripped through Mr. Choi's left leg. Presley then exited the store, leaving his victim withering in pain.

A warrant was issued for Presley's arrest on March 2, 1994. Appellant, however, managed to avoid capture until November 10, 1994, when police found him hiding in a basement on Cantrell Street. As for Mr. Choi, luckily his wound was not fatal. The bullet had entered his lower leg, eight inches below the knee, and passed through the flesh. The victim was hospitalized for a short time and the injuries limited his work ability for over a half of a year. Mr. Choi still experiences pain in his leg when the weather is inclement.

Prior to trial, Presley moved to preclude the Commonwealth from introducing his prior adjudications of delinquency for theft by receiving stolen property in 1989 and 1991 and possession of an instrument of crime in 1991. The trial court denied Presley's motion and, on July 28, 1995, a jury found Presley guilty of aggravated assault and possession of an instrument a crime. Subsequently, appellant was sentenced to seven-to-fifteen years imprisonment. This appeal follows.

While Presley raises a host of issues for our review, they all concern the extent to which an adjudication of delinquency may be introduced in a subsequent criminal proceeding. At present, this important question remains unanswered in our Commonwealth.

Prior to last year, there was no doubt that a juvenile disposition could not be used against a person in criminal proceedings except for subsequent juvenile hearings. *See* 42 Pa.C.S.A. § 6354 (prior to amendment of May 12, 1995). This fact changed, however, when our state legislature overhauled the Juvenile Act. Act No. 13 of the Special Session of 1995, effective July 11, 1995, amended Section 6354 to provide as follows:

§ 6354. **Effect of adjudication.**

(a) **General rule.–** An order of disposition or other adjudication in a proceeding under this chapter is not a conviction of a crime and does not impose any civil disability ordinarily

resulting from a conviction or operate to disqualify the child in any civil service application or appointment.

**(b) Effect in subsequent judicial matters.–** The disposition of a child under this chapter may only be used against him:

(1) in dispositional proceedings after conviction for the purposes of a presentence investigation and report if the child was adjudicated delinquent;

(2) in a subsequent juvenile hearing, whether before or after reaching majority;

(3) if relevant, where he has put reputation or character in issue in a civil matter; or

*(4) in a criminal proceeding, if the child was adjudicated delinquent for an offense, the evidence of which would be admissible if committed by an adult.*

42 Pa.C.S.A. § 6354 (emphasis added). To date, amended Section 6354(b)(4) has yet to be reviewed by an appellate court. Accordingly, we are provided with an opportunity to give guidance to Pennsylvania's bench and bar.

 In his first claim, Presley alleges that amended Section 6354(b)(4) only permits use of a juvenile adjudication in a criminal proceeding "if the substantive evidence underlying the adjudication would be independently admissible at an adult criminal trial." Appellant's brief at 12. Admittedly, a strained reading of subsection (b)(4) would allow for Presley's interpretation. Our state's courts, however, are not duty-bound to give effect to every labored interpretation of our state's statutes. To the contrary, "[w]e are to give the words of a statute their plain and ordinary meaning." *Commonwealth v. Berryman*, 437 Pa.Super. 258, 266, 649 A.2d 961, 965 (1994) *(en banc )*, alloc. denied, 541 Pa. 632, 663 A.2d 685 (1995).

Instantly, for Presley's interpretation to prevail, we are required to insert a word, that is not already existent, into the statute. The statute now reads that a prior juvenile adjudication may be used against a person if it was for "an offense, the evidence of which would be admissible if committed by an

adult." Presley would have us read the statute to provide that a juvenile adjudication may be used against a person if it was for an offense, the **underlying** evidence of which would be admissible if committed by an adult. Unfortunately for Presley, the legislature did not insert the word "underlying" into amended Section 6354(b)(4). The plain and ordinary meaning of the statute, as it now reads, is that the Commonwealth may only introduce evidence of a juvenile adjudication where, if the child were an adult when he committed the offense, evidence of his conviction would be admissible. Accordingly, Presley's first contention must fail.

 Presley next alleges that the trial court erred in applying amended Section 6354(b)(4) retroactively. In presenting this argument, Presley correctly notes that the Statutory Construction Act of 1972 provides that "[n]o statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly." 1 Pa.C.S.A. § 1926. Nevertheless, appellant fails to appreciate the fact that, while Section 6354(b)(4) concerns past adjudications, the trial court applied the statute prospectively. It is well settled that:

> [A]n act is not retroactively construed when applied to a condition existing on its effective date even though the condition results from events which occurred prior to that date. A statute is not retroactive because a part of the requisites for its action is drawn from a time antecedent to its enactment.... [A] statute is not regarded as operating retroactively because of the mere fact that it relates to antecedent events, or draws upon antecedent facts for its operation.

*Creighan v. City of Pittsburgh*, 389 Pa. 569, 575–76, 132 A.2d 867, 871 (1957) (citations omitted).

Further, our Supreme Court has held that "[o]nly where a vested right or contractual obligation is involved is a statute applied retroactively when it is applied to a condition existing on its effective date which resulted from events which occurred prior to that date." *Commonwealth v. Johnson*, 520 Pa. 165, 170, 553 A.2d 897, 900 (1989). Instantly, it cannot be

said that Presley possessed a "vested right" to have his juvenile adjudications kept out of evidence in criminal proceedings. As noted by our Supreme Court:

[A]lterations which do not increase the punishment, nor change the ingredients of the offense, or the ultimate facts necessary to establish guilt, but ... only remove existing restrictions upon the competency of certain classes of persons as witnesses, relate to the modes of procedure only, in which no one can be said to have a vested right, and which the State, upon grounds of public policy, may regulate at its pleasure.

*Commonwealth v. Newman*, 534 Pa. 424, 429, 633 A.2d 1069, 1071 (1993) (quoting *Hopt v. Utah*, 110 U.S. 574, 589, 4 S.Ct. 202, 210, 28 L.Ed. 262, 269 (1884)).

Further, we note that the only reason that juvenile adjudications were previously excluded was due to the legislative mandates of pre-amended Section 6354. Unfortunately for Presley, the legislature revamped the Juvenile Act partially in an attempt to hold child offenders more accountable for their offenses. *See* 42 Pa.C.S.A. § 6301(b)(2). Section 6354(b)(4) serves to achieve this goal and Presley is entitled to no relief.

Presley next claims that Section 6354(b)(4) violates the concept of separation of powers under Pennsylvania's Constitution. To support this argument, Presley directs our attention to Article V, Section 10(c) which provides that:

The Supreme Court shall have the power to prescribe general rules governing practice, procedure and the conduct of all courts.... All laws shall be suspended to the extent that they are inconsistent with rules prescribed under these provisions.

Presley correctly notes that the above provision generally prohibits the legislature from "tell[ing] the Judiciary how to hear and decide cases." *Appeal of Borough of Churchill*, 525 Pa. 80, 88, 575 A.2d 550, 554 (1990) (citing *In re 42 Pa.C.S. Section 1703*, 482 Pa. 522, 394 A.2d 444 (1978)). Nevertheless, "[i]t is well settled that the legislature of a state has the power to prescribe new rules of evidence, providing that they do not

deprive any person of his constitutional rights." *Dranzo v. Winterhalter*, 395 Pa.Super. 578, 589, 577 A.2d 1349, 1354 (1990), *alloc. denied*, 526 Pa. 648, 649, 585 A.2d 468 (1991). This principle was settled nearly sixty years ago, when our Supreme Court stated that "[w]e recognize the right of the legislature to create or alter rules of evidence." *Rich Hill Coal Co. v. Bashore*, 334 Pa. 449, 485, 7 A.2d 302, 319 (1939). More recently, the Court reaffirmed this holding by stating that "[s]ubject only to constitutional limitations, the legislature is always free to change the rules governing the competency of witnesses and the admissibility of evidence." *Newman, supra* at 429, 633 A.2d at 1071.

■ Further, the state constitution, itself, does not provide a complete proscription against laws which regulate practice, procedure and the conduct of courts. To the contrary, the constitution mandates that such laws shall only be prohibited "to the extent that they are inconsistent with rules prescribed" by the Supreme Court. Since the Supreme Court has not yet adopted a rule concerning the issue addressed in Section 6354(b)(4) and our Supreme Court has held that the legislature may properly create rules of evidence, we cannot find that 42 Pa.C.S.A. § 6354(b)(4) violates Article V, Section 10(c) of our state constitution.

■ Presley next argues that Section 6354(b)(4) violates the state constitution in that it "alters final judgments or retroactively affects the inherent attributes of those judgments." 6354(b)(4) has not altered the final judgments in Presley's juvenile adjudications. Those judgments have remained intact. The rule merely effects the evidential use of those judgments in subsequent criminal proceedings. As noted above, Presley never had a vested right to preclude such use. Consequently, his penultimate claim must fail.

■ In his final issue, Presley alleges that Section 6354(b)(4) violates his constitutional right to due process. Presley claims that juveniles may have been induced to admit guilt, rather than stand trial, because pre-amended Section 6354 prohibited use of juvenile dispositions in subsequent

criminal proceedings. Thus, Presley concludes that Section 6354(b)(4) unfairly changes the effects of juvenile adjudications. We do not agree. As noted above, it was only by legislative grace that juvenile adjudications were not admissible under pre-amended Section 6354. Juveniles, who admitted their guilt rather than stood trial, obviously undertook the risk that the legislature would revoke the privileges afforded under the pre-amended statute. Last year, the legislature responded to the rise in juvenile violent crimes and resolved to hold juvenile offenders more accountable. The legislature was well within its rights to withdraw the privileges granted under the pre-amended statute and Presley is entitled to no relief.

Judgment of sentence affirmed.

DEL SOLE, J., concurs in the result.