1999 PA Super 12

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Zakee AZIZ, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 29, 1998.

Filed Jan. 22, 1999.

---

Mark S. Sedley, Public Defender, Philadelphia, for appellant.

Michael Erlich, Asst. Dist. Atty., Philadelphia, for Commonwealth, Appellee.

Before MUSMANNO, J., CERCONE, President Judge Emeritus and BECK, J.

BECK, J.

¶ 1 In this appeal, we are confronted with a host of constitutional challenges to the recently amended Juvenile Act, 42 Pa.C.S.A. §§ 6301–65 ("the Act"). Because we find that none of the claims warrants that we strike the Act on constitutional grounds, we affirm.

¶ 2 At age seventeen, Appellant was charged with armed robbery and related offenses. Pursuant to the terms of the Act, his case went directly to criminal court, where he had the option of requesting treatment within the juvenile system and the burden of establishing that he was entitled to same. This process of "decertification" from criminal court to juvenile court was for decades only applicable to murder cases; however, the 1995 amendments to the Act now provide that any juvenile over the age of fifteen who has committed one of several enumerated crimes, and utilized a deadly weapon during that commission, is to be tried in criminal court unless he can establish by a preponderance of the evidence that a transfer to juvenile court would serve the public interest. 42 Pa.C.S.A. §§ 6302; 6322. This rebuttable presumption of treatment as an adult now extends to a variety of crimes, including rape, involuntary deviate sexual intercourse, aggravated assault, robbery, kidnapping, voluntary manslaughter and conspiracy to commit any of these crimes.[1]

¶ 3 As he did in the trial court, appellant makes a series of constitutionally based arguments regarding the amended Act's considerably wider net. We begin by noting that "duly enacted legislation carries with it a strong presumption of constitutionality and this presumption will not be overturned unless the legislation clearly, plainly and palpably violates the constitution." *Commonwealth v. Swinehart*, 541 Pa. 500, 508, 664 A.2d 957, 961 (1995). "The party seeking to have a legislative enactment declared unconstitutional bears a heavy burden." *Id.*; 1 Pa.C.S.A. § 1922(3).

¶ 4 Not surprisingly, a number of appellant's claims have been confronted and resolved by our supreme court in the context of murder cases. Appellant argues that those cases have "limited applicability" in this case. We disagree. To the extent that the murder cases set forth the standard by which specific constitutional challenges should be considered, we find them not only relevant, but binding. Further, where those cases provide analysis of and insight into the underlying purposes of the Act, we will adhere to their reasoning. We address each claim separately.

¶ 5 Appellant first argues that the Act's provisions are not rationally related to its purposes and, further, that its application is arbitrary. If true, this would constitute a violation of equal protection and due process. *Commonwealth v. Wade*, 485 Pa. 453, 402 A.2d 1360 (1979).

¶ 6 At a hearing in the trial court, appellant was permitted to incorporate the testimony of Dr. Jeffrey Fagan, a juvenile law expert who testified in another case regarding juvenile punishment and recidivism. Dr. Fagan studied the precise issue appellant sought to bring to the court's attention, i.e., the relative "success" of treating juvenile offenders in criminal court. Dr. Fagan's opinion was that adult treatment of juvenile offenders does not prevent those individuals from committing more crimes once they are released; instead, the likelihood of recidivism for this group is enhanced. *See* Jeffrey Fagan, *"The Comparative Advantages of Juvenile Versus Criminal Court Sanctions on Recidivism Among Adolescent Felony Of-*

[1]. Even if the minor does not use a deadly weapon in the commission of an enumerated offense, his case is sent directly to criminal/adult court if he previously has been adjudicated delinquent of one of the enumerated crimes. 42 Pa.C.S.A. § 6302(2)(iii).

*fenders,"* Law and Policy, Vol. 18, Nos. 1 and 2 (January/April 1996).

¶ 7 Relying on Dr. Fagan's conclusions, appellant asserts that the purpose underlying the Act, public safety, is *endangered* by the Act's provisions, not advanced. As a result, there is lacking even a rational relationship between the Act's intent and its terms.

¶ 8 The Commonwealth responds with a number of arguments. It notes first that Dr. Fagan's studies were made in New York and New Jersey, not in Pennsylvania. The relevance of such studies, asserts the Commonwealth, is therefore questionable. Further, even conceding the validity and the applicability of the studies, the Commonwealth suggests that Dr. Fagan's results could be interpreted as supportive of the amended Act. They may reflect the fact that some youthful offenders, perhaps those committing the most serious· of crimes, do not respond to rehabilitative measures. When viewed in this way, the Commonwealth submits, the Act is quite rational since by its terms, it reserves juvenile treatment for those likely to respond to it.

¶ 9 The Commonwealth also asserts that appellant is wrong when he states that specific deterrence is the sole purpose underlying the Act. Instead, the Commonwealth argues, holding violent juvenile offenders accountable for their actions is another goal of the statute, as is the incapacitation of those persons. Drawing the line for juvenile treatment to exclude initially young people who commit violent crimes while armed with deadly weapons is an inherently rational decision, so argues the Commonwealth.

¶ 10 In *Wade,* our supreme court faced constitutional challenges to the Act in the context of a murder charge. The *Wade* court specifically framed the issue before the court as "whether excluding the crime of murder from the original jurisdiction of Juvenile Court bears a rational relationship to the legislative objective sought to be advanced by the Juvenile Act." *Id.* at 461–63, 402 A.2d at 1364. In finding that it did, the court noted that the purpose underlying the Act was not only to rehabilitate juvenile offenders, but also to protect the public interest and promote public safety. *Id.* The legislature de-

cided that murder is a crime of "such a serious nature" as to be precluded, at least initially, from the special benefits of the Act. Considering the goal of public safety, reasoned the court, the decision was not arbitrary and instead bore a rational relationship to the Act's objectives. *Id.* 402 A.2d at 1365.

¶ 11 We believe the reasoning in *Wade* applies in this case. The rationale is even more compelling today since the amended Act redefined the purposes of the statute. In the amended language of the Act, the General Assembly retained the goals of preserving family unity, providing care and protection to juveniles, minimizing, where feasible, separation of a child from his or her parents, and assuring fair and equitable proceedings. It also made significant additions to the Act's stated goals. No longer does the Act seek to "remove children from the consequences of criminal behavior"; instead, its goal is to "provide balanced attention" to the interests of protecting the community, imposing accountability and developing "responsible and productive members of the community." 42 Pa.C.S.A. § 6301(b)(2).

¶ 12 In light of this new language, and in reliance on the rationale in *Wade,* we find that the amendments to the Act, which cause juveniles accused of the enumerated offenses to appear first in criminal court, are not arbitrary and instead are rationally related to the statute's objectives. The commission of a violent crime while armed with a gun is conduct of "such a serious nature" as to initially preclude an individual from the juvenile system.

■ ¶ 13 Appellant next argues that the Act creates an "irrebuttable presumption" of adult treatment, contrary to the right of due process. He relies on *Pennsylvania Department of Transportation v. Clayton,* 546 Pa. 342, 684 A.2d 1060 (1996), wherein our supreme court found unconstitutional a statute that prohibited seizure victims from driving for one year. In *Clayton,* the aggrieved individual had no method of rebutting the presumption that he was unfit to drive.

¶ 14 The Juvenile Act, of course, is far different from the law in *Clayton.* Here, appellant is afforded an opportunity to estab-

lish that he belongs in the juvenile system. A separate section of the statute not only contemplates a hearing on the issue of decertification, but sets forth the procedure to be utilized at such hearing, including the allocation of burdens and the factors to be considered. *See* 42 Pa.C.S.A. §§ 6322; 6355. The Act's presumption of adult treatment for specific offenses simply is not irrebuttable.[2]

 ¶ 15 Appellant next takes issue with the fact that he bears the burden of establishing that he is amenable to treatment within the juvenile system and that such treatment will serve the public interest. He asserts that "fundamental due process requires that the burden of proof in criminal matters remains with the state throughout any criminal prosecution ... because the presumption of innocence may not be compromised." *See Commonwealth v. Wagaman*, 426 Pa.Super. 396, 627 A.2d 735 (Pa.Super.), *appeal denied*, 536 Pa. 623, 637 A.2d 283 (1993).

¶ 16 In response, the Commonwealth relies on *Commonwealth v. Cotto*, 708 A.2d 806 (Pa.Super.1998). There, a panel of this court addressed this precise issue. Abraham Cotto was charged in criminal court for multiple counts of gunpoint robbery and conspiracy offenses he committed at age fifteen. He sought decertification to juvenile court but was denied same. He pled guilty and specifically reserved the right to challenge the constitutionality of the Act. On appeal, he raised two distinct issues: whether the Act was unconstitutionally vague by requiring that transfers "serve the public interest" and whether the Act was unconstitutional because it placed the burden of proof on the accused to establish amenability to treatment in the juvenile system.

¶ 17 The *Cotto* court began its analysis by observing that any right to treatment as a juvenile is derived from statutory law as there is no constitutional guarantee to special treatment for juvenile offenders. *Id.* at 809.

In finding that the term "public interest" was not unconstitutionally vague, the court considered the stated purpose of the Act, its legislative history and the list of factors, set forth in the statute, that the court must consider in determining whether decertification is appropriate. Finding that "public interest" was amply defined by the legislature, and further finding that the Act provided adequate notice and guidance regarding the term, the *Cotto* court held that the Act was not unconstitutionally vague.

¶ 18 With respect to the allocation of burden at the transfer hearing, the *Cotto* court relied primarily on our supreme court's analysis of the issue in the murder context. In *Commonwealth v. Pyle*, 462 Pa. 613, 342 A.2d 101 (1975), the supreme court stated:

> The decision to transfer has no bearing on either the procedural or substantive aspects of the criminal conviction in criminal court (i.e., it is still the Commonwealth's burden to prove every fact necessary to constitute murder beyond a reasonable doubt). Consequently, placing the burden on a petitioner in this manner in no way denies him his due process safeguards.
>
> *Id.* at 622 n. 13, 342 A.2d at 106 n. 12.

¶ 19 The *Cotto* court could find no reason to diverge from the holding in *Pyle* :

> We find the reasoning of *Pyle* to be equally applicable to the amended Act, which mandates that certain violent offenses, in addition to murder, be filed directly in criminal court. A juvenile adjudicatory proceeding differs widely in purpose, scope and result from a juvenile transfer proceeding. At the adjudicatory stage, constitutional due process guarantees the juvenile almost the full panoply of constitutional protections afforded at an adult criminal trial. During the adjudicatory stage, whether in juvenile or criminal court, a full trial is held on the offenses with which the juvenile is charged and a final determination of guilt is made. At a juvenile transfer proceeding, however, the

---

2. Appellant argues that even though the accused is ultimately given an opportunity to rebut the presumption, the lapse in time between arrest and the decertification hearing is unacceptable. Clearly, the timing in these cases will vary among counties and defendants for a variety of

reasons. However, it is the right to rebut the presumption to which appellant is entitled. *Clayton, supra.* The accused does not face trial in criminal court until the issue of decertification is resolved. Therefore, his or her due process rights are protected.

inquiry is focused upon the narrower question of determining the appropriate forum for the adjudicatory proceeding—either juvenile or criminal court. No determination of guilt takes place and the inquiry into the nature and circumstances of the crimes charged is limited to determining the amenability of treatment of the juvenile and the need to protect the public. Moreover, although the punishment ultimately imposed is related to the decision made at the transfer proceeding, the imposition of punishment does not occur until after the Commonwealth has met its burden of proving each element of the crimes charged beyond a reasonable doubt.

*Id.* at 814.

¶ 20 We are bound by *Cotto*. Despite appellant's request that we refrain from following this established precedent, we simply are not at liberty to do so. Appellant argues that he has raised the burden of proof issue in a different manner than was done in *Cotto*; therefore, *Cotto* is not controlling. The "new" claim appellant purports to raise is his assertion that under the amended Act, a juvenile seeking decertification may testify in an effort to disprove elements of the charged offense and/or mount his defense prior to trial, thereby giving the Commonwealth an "incredible advantage." While conceding that the *Cotto* court addressed this issue, appellant insists that this case is different and *Cotto* should not apply.

¶ 21 The *Cotto* court recognized that Pennsylvania's statute differed from New Jersey's in that New Jersey immunizes a juvenile's transfer hearing testimony. The court stated:

The Pennsylvania Juvenile Act does not provide immunity to a juvenile testifying at his transfer hearing. Although *the absence of such a provision does not affect our decision as to constitutionality,* we believe that inclusion of an immunity provision would be prudent and merits legislative consideration.

*Cotto, supra* at 815 n. 3 (emphasis supplied).

¶ 22 The excerpt quoted above establishes that the *Cotto* court considered the very issue appellant raises here. Despite its

recognition that a juvenile's transfer hearing testimony is not immunized, the court found that the Act did not violate due process. Because *Cotto* is binding precedent upon us, we must reject appellant's claim.

¶ 23 In another effort to avoid the holding in *Cotto*, appellant draws our attention to *Commonwealth v. Halye*, 719 A.2d 763 (Pa.Super.1998) (*en banc*). In *Halye*, this court addressed a statutory provision that applied to persons convicted of sexual offenses against children. Among other things, the law, commonly referred to as "Megan's Law," placed the burden on the defendant to establish, after conviction, that he was not a "sexually violent predator" as defined by the statute. The law further provided that those classified as sexually violent predators were subject to a more stringent sentencing scheme and could face life in prison. *See* 42 Pa.C.S.A. §§ 9791–9799.6. Hayle claimed that due process required that the Commonwealth, not the defendant, carry the burden of establishing the sexually violent predator classification. A majority of the *en banc* court agreed.

¶ 24 Relying on *E.B. v. Verniero*, 119 F.3d 1077 (3d Cir.1997), the *Halye* court considered the gravity of the defendant's and the state's interest in the classification, the risk of error in the evaluation process and the hardship on the Commonwealth if it were required to carry the burden of persuasion. Finding that consideration of those factors militated against placing the burden on the defendant, the *Halye* court struck the burden provision of the statute as violative of due process. *Id.* at 764. As was the *Verniero* court, the *en banc* panel in *Halye* court was persuaded by the significant impact on the defendant's freedom, the potential for error in assessment and the relatively insignificant impairment on the state in carrying the burden of persuasion. *Id.*

¶ 25 We have read with interest the *Halye* decision and considered its application in this case. We have no way of knowing whether our supreme court may adopt a similar type of reasoning with respect to the statute at issue here; however, we have no

authority to do so.[3] While the *analogy* of *Halye* and Megan's Law is intriguing in this context, there exists a case directly on point by which we are bound. Because *Cotto* analyzed and resolved the very issue appellant now raises, we must follow it. Appellant cannot prevail on his claim that the statute violates due process since this court already has considered the issue and held otherwise.

¶ 26 For the same reason, appellant's vagueness claim must also fail. The *Cotto* court clearly held that the term "public interest" is not unconstitutionally vague. Therefore, appellant's claim raising this same issue is unavailing. *Cotto*, *supra*, at 813.

¶ 27 Appellant next argues that juveniles, as a protected class, are deprived of fundamental rights as a result of the amended Act. In support of his argument, appellant attempts to establish that juveniles are constitutionally entitled to special treatment. However, the examples proffered by appellant fall short of establishing same. Indeed, all of the "special treatment" accorded juveniles occurs by way of legislative enactments, not laws mandated by the Constitution. Further, in some instances, a juvenile is accorded fewer, not more, rights than an adult. *See Commonwealth v. Williams*, 514 Pa. 62, 522 A.2d 1058 at 1063 (1987) ("[T]here is no constitutional guarantee of special treatment for juveniles"). *See also McKeiver v. Pennsylvania*, 403 U.S. 253 (1984) (juveniles not entitled to jury trial); *In the Interest of J.F.*, 714 A.2d 467 (Pa.Super.1998) ("there is no constitutional right to treatment as a juvenile, [therefore] the legislature is well within its right to withdraw any privileges granted under [the Juvenile Act]").

¶ 28 Because appellant has not shown that juveniles are a protected class, and because the relevant case law establishes the contrary, appellant's claim fails.

¶ 29 Appellant next asserts that even if the federal Constitution provides no relief, the state constitution does. He relies on *Commonwealth v. Davis*, 526 Pa. 428, 586 A.2d 914 (1991), to support this claim. In *Davis*, an evenly divided court affirmed the holding of this court that, in accordance with due process, a juvenile's probation could not be revoked based solely on hearsay evidence.

¶ 30 *Davis* does not stand for the proposition that our state constitution, unlike its federal counterpart, affords additional protections to juveniles. The *Davis* court merely held that *like an adult*, a juvenile cannot have his or her probation revoked, and, therefore, liberty denied, on the basis of hearsay alone. Further, the opinion in support of affirmance in *Davis* did not set forth a distinct difference between the protections of the state and federal constitutions. Instead, the court reasoned that even "if there is a doubt" whether the federal constitution provides such protection, "there is no doubt" that the protection is afforded by the Pennsylvania constitution. *Davis*, *supra* at 433, 586 A.2d 914.

¶ 31 In attempting to establish a basis for relief under the state constitution, appellant suggests that an analysis like the one set forth in *Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887 (1991), is appropriate. *Edmunds* recommends, among other things, that we consider the historical treatment of the constitutional clause at issue as well as the treatment the issue is given in sister states. With respect to the latter, appellant notes laws in two other states that have been struck on state constitutional grounds. One such law, Utah's, gave prosecutors "broad latitude in deciding whether to file charges in adult or in juvenile court." Appellant's Brief, at 49. Appellant concedes that our statute does not "overtly" afford such latitude, but, he argues, by deciding not to oppose decertification, a prosecutor in Pennsylvania can create such latitude. *See Utah v. Mohi*, 901 P.2d 991 (Utah 1995). Another state's law, Oklahoma's, distinguished between male and female juvenile offenders, which clearly is not an issue here, and failed to provide a hearing for the juvenile. *See Kelley v. Kaiser*, 992 F.2d 1509 (10th Cir.1993).

¶ 32 We are not persuaded by appellant's arguments. First, notwithstanding the language in *Davis*, our supreme court has found federal and state due process clauses to be coextensive. *Pennsylvania Game Commis-*

3. The supreme court granted allocatur in *Cotto* on October 14, 1998.

*sion v. Marich*, 542 Pa. 226, 666 A.2d 253 (1995); *R. v. Com., Dept. of Public Welfare*, 535 Pa. 440, 636 A.2d 142, 152 (1994). Second, the other state cases relied on by appellant differ significantly from the one we have before us.[4] Third, many other states have taken the same route Pennsylvania has in increasing the number of offenses that may subject a juvenile to trial in adult court. *See e.g., State v. Ladd*, 951 P.2d 1220 (Alaska App.1998); *State ex rel. A.B.*, 936 P.2d 1091 (Utah App.), *cert. denied*, 945 P.2d 1118 (Utah 1997); *Bishop v. State*, 265 Ga. 821, 462 S.E.2d 716 (1995); *In Interest of A.L.*, 271 N.J.Super. 192, 638 A.2d 814 (1994). Under an *Edmunds* analysis then, the amended statute finds support, not criticism. As a result, appellant has not made out a separate and distinct state constitutional claim.

¶ 33 Appellant raises another state constitutional claim and argues that the amended Act "dictates practice and procedure within the courts," thereby violating Article V, Section 10(c) of the Pennsylvania Constitution. That provision grants to our supreme court the "power to prescribe general rules governing practice, procedure, and the conduct of all courts." Placing the burden of proof on the juvenile at the decertification hearing, argues appellant, is a matter of procedure over which the supreme court has exclusive power, which power is usurped by operation of the Act.

¶ 34 The Commonwealth points out that the constitutional provision at issue suspends only those laws that "are inconsistent with rules prescribed under these provisions." Art. V § 10(c). Relying on *Commonwealth v. Presley*, 455 Pa.Super. 13, 686 A.2d 1321 (1996), *appeal denied*, 548 Pa. 634, 694 A.2d 621 (1997), the Commonwealth argues that in order to be granted relief on this basis, appellant must show that there exists a duly promulgated procedural rule with which the Act conflicts. In the absence of such a rule,

appellant cannot rely on Article V Section 10(c). We agree.

¶ 35 In *Presley*, this court was faced with the same argument with regard to a law on the effect of previous juvenile adjudications in subsequent proceedings. It rejected the claim due to the lack of a rule on the issue. *Id.* 686 A.2d at 1324–25. Because the Act's provision is not at odds with an established rule, appellant is not entitled to relief.[5]

¶ 36 Appellant's final claim is that the trial court erred in its assessment under the terms of the Act, that is, it erroneously concluded that appellant did not meet his burden in establishing that he was amenable to juvenile treatment. The decision whether to grant decertification will not be overturned absent a gross abuse of discretion. *Commonwealth v. Reed*, 435 Pa.Super. 304, 645 A.2d 872 (1994), *appeal denied*, 540 Pa. 630, 658 A.2d 794 (1995). Appellant characterizes the trial judge's resolution of the decertification issue as a "rubber stamp to the District Attorney's decision to charge this juvenile as an adult." Appellant's brief at 56. Our review of the decertification hearing transcript leads us to conclude otherwise, as it establishes that the court heard and was persuaded by a number of significant, relevant factors in finding that appellant did not belong in a juvenile setting.

¶ 37 Appellant offered the testimony of Dr. Steven E. Samuel, an expert in forensic psychology and the treatment of juveniles, who opined that appellant was treated improperly during his previous juvenile commitments. According to Dr. Samuel, appellant should have been prescribed medication during his placement due to recurrent major depression. Dr. Samuel believed that appellant should be decertified to the juvenile system and placed in a "secure and locked treatment setting."

---

4. Appellant's argument that the prosecutor can "control" who is treated as a juvenile by merely deciding when to oppose decertification assumes that the trial court will ignore its mandate to consider the various factors set out in the statute. We do not make the same assumption.

5. Further, we agree with the Commonwealth that the entire Juvenile Act could be considered a usurpation of the supreme court's rule-making powers if considered in the manner presented by appellant. As a result, the entire *procedure* of juvenile certification and decertification would be void and all persons would be under the jurisdiction of the criminal court.

¶ 38 In addition to Dr. Samuel's opinion, appellant offered the previously recorded testimony of Dr. Fagan, who did not examine appellant, but whose opinion addressed juvenile and adult treatment generally. As noted above, Dr. Fagan believes that treating juveniles in adult prisons is detrimental to their future and impacts negatively on recidivism.

¶ 39 In its cross-examination of Dr. Samuel, the Commonwealth brought out the fact that appellant had the benefit of juvenile treatment in previous instances, but did not respond well. Specifically, after an adjudication of delinquency for robbery, appellant was ejected from a treatment facility for assaulting another student. Less than a year later, he "went AWOL" from another facility while on a home pass and later was discharged from that facility. The following year, after facing theft charges, appellant was sent to yet another facility in Delaware, where he was involved in a physical altercation with a staff member. Less than six months after discharge from the Delaware facility, appellant was arrested on the instant armed robbery charges.

¶ 40 Based on the seriousness of the allegations lodged against appellant, as well as the juvenile treatment he previously was afforded but from which he apparently did not benefit, the court found that decertification was inappropriate.

¶ 41 Appellant's history shows a significant pattern of violent and escalating criminal behavior. In light of the entire record, we find no abuse of discretion in denying decertification.

¶ 42 After reviewing appellant's exhaustive list of constitutional challenges, we are compelled to agree with the Commonwealth that the majority of appellant's claims are better addressed to the legislature than the courts. Indeed, we are persuaded by some of the policy arguments raised by appellant and, like the court in *Cotto*, we believe several changes suggested by appellant are "prudent and merit legislative consideration." *Cotto, supra* at 815 n. 3. However, in light of the relevant law, we find that the Act passes

constitutional muster and appellant is not entitled to relief.

¶ 43 Judgment of sentence affirmed.

